# IN THE U.S. DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | |
|---|---|
| **HEALTHCARE*FIRST*, INC.** )<br><br>Plaintiff, )<br><br>v. )<br><br>**MICHAEL GREENLEE** )<br>Serve at: 3600 North Fenwicke Street )<br>Ozark, MO 65721 )<br><br>and )<br><br>**HEALTHREV PARTNERS, LLC.** )<br>Serve at: 2144 E. Republic Road, Suite )<br>F302, Springfield, MO 65804 )<br><br>Defendants )<br> ) | **Case No.** 6:20-CV-3243<br><br>**Division No. ___** |

## PETITION FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff HEALTHCARE*first*, Inc., having first been duly sworn, and for its Petition against Defendants Michael Greenfield and HEALTHREV Partners, LLC states as follows:

## PARTIES, JURISDICTION & VENUE

1.  Plaintiff HEALTHCARE*first*, Inc. ("HCF") is a Missouri corporation organized and existing pursuant to the laws of the State of Missouri with its principal place of business located in Greene County, Missouri.

2.  On information and belief, Defendant Michael Greenlee ("Greenlee") is an individual and a former employee of HCF who resides in Christian County, Missouri.

3. On information and belief, Defendant HealthRev Partners, LLC ("HRP") is a Missouri limited liability corporation organized by Greenlee pursuant to the laws of the State of Missouri with its principal place of business located in Christian County, Missouri.

4. On information and belief, Greenlee is also the CEO of HRP.

5. Greenlee created or organized HRP during or immediately after his separation from HCF.

6. On information and belief, Greenlee is a member of the HRP limited liability company.

7. This is a civil action for injunctive relief and damages arising out of Defendants' tampering with HCF's computers and data, misappropriation of its trade secrets, and breach of non-solicitation, non-compete and confidentiality agreements that Greenlee entered into with HCF.

8. This court has subject matter jurisdiction over HCF's claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because Counts I and II allege claims against Defendants for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq. and the Defend Trade Secrets Act, 18 U.S.C. § 1833 et seq., and HCF's other claims are so related to HCF's federal claims in that they form part of the same case or controversy under Article III of the United States Constitution such that this Court should exercise its supplemental jurisdiction over them.

9. Venue is proper pursuant to 28 U.S. Code § 1391 because Greenlee resides in this judicial district and a significant portion of the events giving rise to the claims occurred in this judicial district.

10. Venue is also proper because Greenlee voluntarily entered into the above referenced agreements with forum-selection clauses providing that this dispute would be brought in federal or state court in Missouri and that he would submit to this Court's personal jurisdiction over him and waives any other requirement (whether imposed by statute, rule of court or otherwise) with respect to personal jurisdiction or venue or service of process. See Intellectual Property, Confidentiality and Non-Compete Agreement ("the NC Agreement") attached hereto as **Exhibit 1**, and incorporated by reference as if fully set forth herein, at ¶ 10; Non-Disclosure Agreement ("the ND Agreement") attached hereto as **Exhibit 2**, and incorporated by reference as if fully set forth herein, at ¶ 11; Non-Solicitation Agreement ("the NS Agreement") attached hereto as **Exhibit 3**, and incorporated by reference as if fully set forth herein, at ¶ 16; and the Full and General Release ("the Release") attached hereto as **Exhibit 4**, and incorporated by reference as if fully set forth herein, at ¶ 9

## FACTUAL BACKGROUND

### Greenlee's Employment

11. On September 16, 2015, HCF hired Greenlee as a Home-Homecare Sales Representative, in which job Greenlee had responsibilities generally involving successfully facilitating the transition of a prospect or existing customer through the essential phases of the Sales Process (i.e., Leads, Opportunities, Demos, Proposal and Close).

12. On April 18, 2017, HCF re-hired Greenlee into a National RCM Sales Director job, in which job Greenlee had responsibilities generally involving selling HCF products to

3

prospects and customers in order to achieve designated sales and activity goals, consisting in, prospecting new business in assigned territory, conducting product demonstrations, and representing HCF at conferences and seminars. Greenlee's position was also responsible for accurately compiling and tracking information on customers and prospects in the contact management software designated by HCF.

13. In conjunction with HCF's re-hiring of Greenlee, HCF presented (and Greenlee signed) several documents, including an offer letter, the NC Agreement, the ND Agreement, and the NS Agreement.

14. HCF offered the NC, ND and NS Agreements and all of their terms, privileges, conditions and obligations to Greenlee.

15. Greenlee accepted these Agreements and all of their terms, privileges, conditions and obligations.

16. HCF traded Greenlee's re-hiring and compensation for his acceptance of the terms of these Agreements, including their restrictive covenants.

17. HCF is and has been at all relevant times engaged in the business of providing, through itself and its affiliated companies, revenue cycle management, administration and collation of Consumer Assessment of Healthcare Providers and Systems surveys ("CAHPS"), and advanced analytics solutions for home health and hospice agencies nationwide.

18. HCF has proprietary rights in and has the right to use its confidential and proprietary information including, but not limited to business, financial, customer and product development plans, trade secrets, customer lists, customer information, customer

contacts, forecasts, strategies, information and work product in connection with its business and has developed and continues to use business, financial, customer and product development plans, customer lists, customer information, customer contacts, forecasts, strategies, information and work product in association with its business and its services. Such proprietary and confidential information is not available to the general public.

19. HCF markets its services and provides its services throughout the United States and throughout the state of Missouri, and it maintains its headquarters office at 1343 E. Kingsley Street, Suite A, Springfield, Missouri 65804.

20. HRP was organized as a limited liability company on December 17, 2019. See Articles of Organization for HRP attached hereto as **Exhibit 5** and incorporated by reference as if fully set forth herein.

21. On information and belief, HRP's founder and CEO is Greenlee. See Greenlee's LinkedIn profile as of August 06, 2020 attached hereto as **Exhibit 6** and incorporated by reference as if fully set forth herein.

22. Greenlee, as founder, CEO and member of HRP, makes Greenlee and HRP one and the same with regard to their actions and knowledge.

23. On information and belief, HRP is and has been at all relevant times engaged in the business of providing, through itself and its affiliated companies, revenue cycle management, administration and collation of Consumer Assessment of Healthcare Providers and Systems surveys ("CAHPS"), and advanced analytics solutions for home health and hospice agencies nationwide. See HRP website as of

24. August 05, 2020 attached hereto as **Exhibit 7** and incorporated by reference as if fully set forth herein.

25. On information and belief, HRP markets its services and provides its services throughout the United States and throughout the state of Missouri. HRP maintains its headquarters office at 1450 W. Jackson Street, #602, Ozark, MO 65721.

### The agreements between Greenlee and HCF

26. On or about May 1, 2017, Defendant Greenlee entered into the NC, ND, and NS Agreements with HCF. A true and accurate copy of the NC, ND, and NS Agreements entered into between Defendant Greenlee and HCF are attached hereto as **Exhibits 1, 2, and 3**, and incorporated by reference as if fully set forth herein.

27. On or about January 1, 2020, Defendant Greenlee entered into the Release Agreement with HCF. A true and accurate copy of the Release Agreement entered into between Defendant Greenlee and HCF is attached hereto as **Exhibit 4**, and incorporated by reference as if fully set forth herein.

28. The purpose of the NC Agreement is made plain and in the first paragraph states:

> Acknowledgements and Agreements. Employee hereby acknowledges and agrees that in the performance of Employee's duties to the Company during the Employment Period Employee will be brought into frequent contact with existing and potential customers of the Company throughout the world. Employee also agrees that trade secrets and confidential information of the Company, gained by Employee during Employee's association with the Company, have been developed by the Company through substantial expenditures of time, effort and money and constitute valuable and unique property of the Company. Employee further understands and agrees that the foregoing makes it necessary for the protection of the Company's business that Employee not compete with the Company during his employment with the Company and not compete with the Company for a reasonable period

thereafter, as further provided in the following Subsections.  See NC Agreement, **Exhibit 1** at ¶ 1(a).

29. The purpose of the ND Agreement is made plain and in the first paragraph states:

> Employee agrees during the term of its employment with Company and thereafter that it will take all steps reasonably necessary to hold Company's Proprietary Information in trust and confidence, will not use Company Proprietary Information in any manner or for any purpose not expressly set forth in this Agreement, and will not disclose any such Company Proprietary Information to any third party without first obtaining Company's express written consent on a case-by-case basis.  See ND Agreement, **Exhibit 2** at ¶ 1.

30. The purpose of the NS Agreement is made plain and in the opening paragraph states:

> THIS NON-SOLICITATION AGREEMENT (the "Non-Solicitation Agreement") is entered into by and between HEALTHCARE*first*, Inc., a Texas corporation, and the undersigned employee of HEALTHCARE*first*, Inc. to protect the valuable competitive information and business relationships of HEALTHCARE*first*, Inc.  See NS Agreement, **Exhibit 3** at the first full paragraph.

31. The purpose of the Release Agreement is made plain and in the second paragraph of the introductory section states:

> I acknowledge that the Employer has no obligation of any kind, in the absence of this Release, to provide me with the Separation Package referenced below, and the Employer has advised me that it is voluntarily agreeing to provide me with said Separation Package in exchange for this Release.  See Release Agreement, **Exhibit 4** at the second full paragraph.

32. Under the terms of the NC Agreement, in consideration of HCF's re-hiring of Greenlee, the compensation HCF paid Greenlee in connection with his employment, and the other benefits of his employment with HCF including exposure and access to HCF's confidential information and trade secrets, and found reasonable and sufficient as consideration by Greenlee in his NC Agreement by Greenlee in **Exhibit** 1 at ¶ 1(i),

7

Greenlee agreed to narrowly tailored non-compete provisions structured to protect HCF's interests:

> For a period of two (2) years following the termination of Employee's employment, Employee will not:
>
> (A) solicit customers, business, patronage or orders for, or sell, any products or services in competition with, or for any business that competes with, the Company's business;
> (B) divert, entice or otherwise take away any customers, business, patronage or orders of the Company or attempt to do so; or
> (C) engaging in a business competitive with Company or Company business, as any person, firm, association, partnership, corporation or other entity.
> (D) making any statement or other disclosure or communication to any party regarding any aspect of the operations of the company or regarding company business, including amounts charged for services rendered. See NC Agreement, **Exhibit 1** at ¶ 1(b)(ii).

33. Greenlee's NC Agreement also states:

> Indirect Competition. For the purposes of this section, inclusive, but without limitation thereof, Employee will be in violation thereof if Employee engages in any or all of the activities set forth therein directly as an individual on Employee's own account, or indirectly as a partner, joint venturer, employee, agent, salesperson, consultant, officer and/or director of any firm, association, partnership, corporation or other entity, or as a stockholder of any corporation in which Employee or Employee's spouse, child or parent owns, directly or indirectly, individually or in the aggregate, more than five percent (5%) of the outstanding stock. See NC Agreement, **Exhibit 1** at ¶ 1(b)(iii).

34. Greenlee's NC Agreement defines the restricted territory as:

> **"Restricted Territory"** means: (i) the geographic area(s) within a one hundred (100) mile radius of any and all Company location(s) in, to, or for which Employee worked, to which Employee was assigned or had any responsibility (either direct or supervisory) at the time of termination of Employee's employment and at any time during the two (2) year period prior to such termination and (ii) all of the specific customer accounts, whether within or outside of the geographic area described in (i) above, with which Employee had any contact or for which Employee had any responsibility (either direct or supervisory) at the time of termination of Employee's

employment and at any time during the two (2) year period prior to such termination.  See NC Agreement, **Exhibit 1** at ¶ 2(b)(ii).

35. Greenlee further agreed to confidentiality in the NC Agreement and that violation of that confidentiality constituted a misappropriation of HCF's trade secrets.  Indeed, the NC Agreement makes plain that the information spelled out in the NC Agreement is the sole property of HCF, that HCF has taken reasonable steps to secure it, including electronically, and that Greenlee's only authorized access to that information is to perform his duties and obligations in HCF's interest. See NC Agreement attached as **Exhibit 1** at ¶ 1(d)(i).

36. Greenlee also agreed in the NC Agreement at ¶ 1(h) that "temporary and permanent injunctive relief may be granted in any proceeding which may be brought to enforce any provision contained in this Agreement, without the necessity of proof of actual damage" and that this is in addition to, "any other rights or remedies that the Company may have at law or in equity."

37. Finally, in the NC Agreement at ¶¶ 3 and 7, Greenlee agreed that the "agreement shall survive and continue in full force in accordance with its terms notwithstanding any termination of the Employment Period," and "In the event of litigation between the Company and Employee related to this Agreement, the non-prevailing party shall reimburse the prevailing party for any costs and expenses (including, without limitation, attorneys' fees) reasonably incurred by the prevailing party in connection therewith."

38. Under the terms of the ND Agreement, in consideration of HCF's re-hiring of Greenlee's, the compensation HCF paid Greenlee in connection with his employment,

and the other benefits of his employment with HCF including exposure and access to HCF's confidential information and trade secrets, and found reasonable and sufficient as consideration by Greenlee in his ND Agreement by Greenlee in **Exhibit 2** at ¶ 4 of the Recitals, Greenlee agreed to narrowly tailored non-disclosure and use provisions structured to protect HCF's interests by limiting his authorization to use or disclose such information solely in HCF's interest. See ND Agreement attached as Exhibit 2 at ¶1(d)(i).

39. The ND Agreement defines "Company Proprietary Information" as:

> By way of illustration, but not limitation, "**Company Proprietary Information**" includes the following, whether owned by, possessed by or in control of the Company, its subsidiaries, affiliates, or parents: (a) trade secrets (including ideas, research and development, recipes, know-how, formulae, compositions, manufacturing and production processes and techniques, technical data, designs, drawings, specifications, customer and supplier lists, pricing and cost information, business and marketing plans and proposals where a trade secret under law), technologies, processes, formulae, algorithms, industrial models, architectures, layouts, look-and-feel, designs, specifications, methodologies, internet domain names, URLs, software or software applications (including source code, object code, other executable code, scripts, interfaces, data, databases, websites, firmware and related documentation), artwork, inventions, mask works, ideas, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques (hereinafter collectively referred to as "**Inventions**"); (b) information regarding plans for research, development, new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, contracts, prices and costs, suppliers and customers; and (c) information regarding the skills and compensation of employees of Company. See ND Agreement attached as **Exhibit 2** at ¶ 1.

40. In the ND Agreement, Greenlee also agreed to narrowly tailored non-disclosure and use provisions of third party information procured while he was employed at HCF. See ND Agreement attached as **Exhibit 2** at ¶ 2.

41. Through the ND Agreement, HCF also protected its proprietary company work product both during Greenlee's employment and thereafter. See ND Agreement attached as **Exhibit 2** at ¶ ¶ 4; 5(a), (c), (d); 6; and 7.

42. The ND Agreement also sets out a process Greenlee was required to following regarding use or disclosure of restrictions discussed in the ND Agreement. See ND Agreement attached as **Exhibit 2** at ¶ 5(b).

43. Greenlee also agreed in the ND Agreement at **Exhibit 2** ¶ 15 that, "[a] breach of any of the promises or agreements contained in this Agreement may result in irreparable and continuing damage to Company for which there may be no adequate remedy at law, and Company is therefore entitled to seek injunctive relief as well as such other and further relief as may be appropriate."

44. Finally, in the ND Agreement at ¶ 16 of **Exhibit 2**, Greenlee agreed that "[t]he following provisions shall survive termination of this Agreement: Paragraphs 1 – 9, 15 and 16."

45. Under the terms of the NS Agreement, in consideration of HCF's re-hiring of Greenlee, the compensation HCF paid Greenlee in connection with his employment, and the other benefits of his employment with HCF including exposure and access to HCF's confidential information and trade secrets, and found reasonable and sufficient as consideration by Greenlee in his NS Agreement in **Exhibit 3** at ¶ 1(c), Greenlee agreed to narrowly tailored non-solicitation, confidentiality and other common law duty provisions structured to protect HCF's interests by, again, limiting the authorization of Greenlee's use of customer or employee information to only those purposes for the

benefit of HCF for a period of twelve (12) months. See NS Agreement attached as **Exhibit 3** at ¶¶ 2-5.

46. Greenlee agrees in the NS Agreement, in **Exhibit 3** at ¶ 6, that he will, "for twenty-four (24) months thereafter…prior to accepting future or other employment, provide a copy of this Non-Solicitation Agreement to any recruiter who assists…in locating employment other than with HEALTHCARE*first*, Inc. and to any prospective employer with which [he] discusses potential employment."

47. In **Exhibit 3** at ¶¶ 8-9, Greenlee agrees that the NS Agreement terminates, "only upon the mutual written agreement of the parties" and that, nevertheless, the "obligations contained in Paragraphs 2, 3 and 4 shall survive the termination of this Non-Solicitation Agreement. In addition, the termination of this Non-Solicitation Agreement shall not affect any of the rights or obligations of either party arising prior to or at the time of termination of this Non-Solicitation Agreement, or which may arise by any event causing the termination of this Non-Solicitation Agreement."

48. The NS Agreement also provided for several cumulative remedies for any breach of the NS Agreement, including that compliance with Paragraphs 2, 3 and 4 is necessary to protect the business and goodwill of HCF, that a breach of Paragraphs 2, 3 or 4 will irreparably and continually damage HCF such that money damages may not be adequate, that HCF shall be entitled to a preliminary or permanent injunction in order to prevent the continuation of such harm, that HCF shall be entitled to money damages insofar as they can be determined, as well as other damages permitted by applicable law, that in addition to any money damages, HCF shall be entitled also to recover the

amount of any fees, compensation, or other remuneration earned by Greenlee as a result of any such breach, and that in addition to these remedies, pursuant to Paragraph 12, the Employee Non-Solicitation Period and/or Customer Non-Solicitation Period will be extended by any and all periods in which Greenlee is found to have been in violation of the applicable covenants contained in Paragraphs 2 or 3 of the NS Agreement. See NS Agreement attached as **Exhibit 3** at ¶¶ 11-14.

49. Under the terms of the Release Agreement, in consideration of Greenlee's separation package, and found reasonable and sufficient by Greenlee in his Release Agreement in **Exhibit 4** at ¶2 (5th full paragraph), Greenlee agreed to narrowly tailored representations regarding HCF's property, non-disparagement and confidentiality structured to protect HCF's interests by thereby denying any authorization he had to use in any way HCF's property as defined in the Release Agreement:

> I understand that I was required to return all Employer Property on or prior to the Termination Date. I acknowledge and agree that I have returned all of the Employer's property to the Employer, and I have not retained (directly or indirectly), any of the Employer's property, including, without limitation, security identification badges and/or pass cards, facility access cards, any equipment issued to me by the Employer, laptops, flash drives, all other electronic devices and other computer equipment (including peripherals), and any copies (electronic, hard copy or otherwise) of any Employer documents, data, files, records, or other materials (including property maintained in electronic, hard copy, or any other format).

> I have not (except as specifically permitted by the Employer or as required by my legitimate and authorized job duties with the Employer), directly or indirectly, destroyed, deleted, altered, or misappropriated any of the Employer's software, documents, data, files, records, or other property (including those that are electronic, hard copy or in any other format).

> I will not (directly, indirectly, expressly or impliedly): (a) make any false, disparaging or derogatory statements to anyone (including, but not limited

to, to any media outlet, on social media websites or blogs, over the internet, current or former employee, consultant, or client of the Employer), regarding the Employer, or about its services, or about any of its owners or employees, or about the Employer's business affairs and financial condition; or (b) engage in any conduct which is intended to harm professionally or personally the reputation of the Employer (including its owners and current and former employees).

I will not use for any purpose or disclose to any person or entity any confidential information of the Employer acquired by me during the course of my employment with the Employer. I will hold all confidential information of the Employer as a fiduciary, in strict confidence and trust, for the Employer's sole benefit. The term "confidential information" as used in this Release includes, but is not limited to, records, lists, and knowledge of the Employer's customers, prospects, methods of operation, finances, operating and strategic plans, processes, trade secrets, personnel information and other such intellectual property, as the same may exist from time to time. The term "confidential information" does not include information made known to the public by authorization of the Employer's executive team or as a matter of public record. See Release Agreement attached as **Exhibit 4** at ¶¶ 3.3-3.6.

50. In addition, in the Release Agreement, Greenlee agreed there were only a few situations in which disclosures of confidential information or trade secrets would not result in his liability for such prohibited disclosures:

Notwithstanding any other provisions of this Agreement, I understand that I will not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding if such filing is made under seal. I understand that if I file a lawsuit for retaliation by Employer for reporting a suspected violation of law, I may disclose Employer's trade secrets to my attorney and use the trade secret information in the court proceeding if I (i) file any document containing the trade secret under seal; and (ii) do not disclose the trade secret, except pursuant to court order. See Release Agreement attached as **Exhibit 4** at ¶ 4 (2nd full paragraph).

51. And finally, in the Release Agreement, Greenlee acknowledged that, "if I breach a material provision of this Agreement, I will return the amount paid under this Agreement to Employer (as allowed under applicable law)." See Release Agreement attached as **Exhibit 4** at ¶ 11.

52. At the time HCF presented the final Release Agreement to Greenlee, it reminded him about his non-competition restrictions.

53. HCF takes its electronic information security and use very seriously and maintains cybersecurity and acceptable use policies with regard to its information, computer and electronic systems, the purpose for which is stated clearly in its Information Security Policy Purpose and Scope paragraphs. See Information Security Policy attached as **Exhibit 8** at ¶¶ 4, 5.

54. Further, in its Acceptable Use Policy, HCF takes seriously the restrictions against an employee's use of the company's information technology for personal financial gain or downloading its confidential information on to personal email accounts: "Information Resources are provided to facilitate company business and should not be used for personal financial gain" and "[e]mployees should not use personal email accounts to send or receive [HCF] confidential information." See Acceptable Use Policy attached as **Exhibit 9** at pg. 3, ¶¶ 11, 15.

55. HCF conducts regular trainings on these and other informational systems policies and Greenlee was last trained on the policies on or around September 30, 2019. See Greenlee IT Training Certificates and Materials attached as **Exhibit 10**.

**Greenlee's access to HCF property during employment by HCF**

56. HCF provided Greenlee access to HCF's Proprietary Information in connection with his employment at HCF including, but not limited to, HCF's confidential information, trade secrets, and its customer lists. As above, his authorization to access and use such information was solely for the benefits of HCF.

57. From and after May 1, 2017, HCF employed Greenlee in the position of National Revenue Cycle Management ("RCM") Sales Director and placed him as a high-level manager in the Springfield office of HCF. Greenlee's position involved continued and sustained contact with customers of HCF who provided substantial business to HCF in the state of Missouri and nationwide. Greenlee's position as RCM Sales Director involved overseeing, development and maintenance of high level customer contacts and customer relations in addition to his duties concerning the administration of HCF's services nationwide.

58. Greenlee directly dealt with customers of HCF on behalf of HCF on a daily basis.

59. As part of his position with HCF, Greenlee was issued a laptop and access to HCF's relevant computer software and systems solely for the benefit of HCF's interests.

60. In connection with Greenlee's duties and responsibilities on behalf of HCF, and in addition to HCF's placement of Greenlee in a position involving the development and maintenance of a high degree of close customer contact and good will, HCF provided Greenlee access to HCF's confidential information, business plans and work product, much of which existed in HCF's computers and software systems, such as but not limited to, Microsoft Outlook, Salesforce and SharePoint.

61. Part of Greenlee's duties and responsibilities involved overseeing the attraction of new business to HCF and the retention of HCF's existing business with its customers, all of which involved both Greenlee's close contact and close relationship with HCF's customers and frequent, daily use of HCF's confidential and proprietary information and HCF's other resources, much of which existed in HCF's computers and software systems, such as but not limited to, Microsoft Outlook, Salesforce and SharePoint.

62. Greenlee's unique position and close relationship with HCF's customers was developed, facilitated, maintained, and nurtured with HCF's financial support and HCF's resources, HCF's good will and entirely at HCF's expense.

63. Greenlee continued in this position until his employment ended on November 19, 2019.

64. Greenlee's employment was terminated for good cause in that he engaged in violations of HCF's Code of Conduct and Harassment Policy.

65. Leading up to the termination of his employment, Greenlee knew he was being investigated and could be terminated for these violations.

66. During the investigation into Greenlee's alleged violation of HCF's Code of Conduct and Harassment Policy, on November 5, 8, 11, 18 and 19, 2019, contrary to the agreements Greenlee signed and HCF policy, without authorized access, exceeding his authorized access and without reasonable grounds to believe he had access or authority to do so, Greenlee downloaded from his HCF laptop email account to his personal email account HCF's confidential information such as customer lists, training materials and marketing materials that were to be used solely for the benefit of HCF's interests.

67. Unbeknownst to HCF at the time, as early as November 5, 2019, but possibly earlier, while the harassment investigation was still being conducted, Greenlee had violated HCF's Acceptable Use Policy and the NS, NC and ND agreements by downloading and transferring HCF confidential and proprietary information from his work laptop to his personal email account for personal financial gain and not for the benefit of HCF.

**Greenlee's conduct after his employment ended with HCF**

68. From and after December 17, 2019, approximately one month from the date of the termination of Greenlee's employment with HCF, Greenlee founded and has been employed as the CEO of HRP. See **Exhibits 5 and 6.**

69. Greenlee's founding and employment as CEO with HRP is in direct violation of the NC, ND, NS and Release Agreements as HRP markets, sells and promotes services and products in direct competition to those offered by HCF and operates within one hundred (100) miles of HCF.

70. HCF's investigation is continuing and the totality of HRP and Greenlee's activities since the termination of Greenlee's employment with HCF is unknown, but here are some activities that have come to HCF's attention:

   a. HRP, founded and run by Greenlee, is in direct competition with HCF.

   b. Their website describes them as providing services to "home health and hospice agencies across the nation through high quality, personalized revenue cycle management services and consulting enabled by the latest technology." See **Exhibit 7**.

c. Greenlee describes himself on his LinkedIn at **Exhibit 6** as working "with home health and hospice agencies all over the United States with their revenue cycle management services" as founder and CEO of HRP.

d. In comparison, HCF's website states that HCF delivers "innovative, easy-to-use, and affordable solutions that enable home health and hospice agencies to put patients before paperwork" and HCF is a "full service provider of revenue cycle management, CAHPS, and advanced analytics solutions for home health and hospice agencies nationwide." See HCF Website attached hereto as **Exhibit 11** and incorporated by reference as if fully set forth herein.

e. In addition, HRP on April 17, 2020, through Greenlee, sent a marketing e-mail to HCF's customers with a link to a blog.

f. For approximately the last six months, Greenlee has posted information on LinkedIn, Facebook and Twitter numerous times in competition with HCF and soliciting HCF's customers, tagging them by name in his posts.

g. Greenlee acknowledged at **Exhibit 1** ¶ 1(i); **Exhibit 2** Recitals (paragraph 4) and ¶ 15; and **Exhibit 3** ¶¶ 1(c) and 11, in the NC, ND and NS Agreements that the restrictions set forth therein and the time period and geographic location restrictions are "reasonable in the context of the nature of the Company's business and the competitive injuries likely to be sustained by the Company if Employee were to violate such obligations," or words to that effect.

71. HCF, by and through counsel, on April 23, 2020, demanded in writing that Greenlee and HRP through Greenlee immediately cease their conduct in violation of the Agreement and asked for written assurances of such.

72. No written assurances were forthcoming and neither Greenlee, nor HRP have ceased their conduct in violation of the Agreement.

73. Greenlee remains employed by HRP and/or continues providing services on behalf of HRP to this day as its founder and CEO.

## COUNT I

## VIOLATION OF THE FEDERAL COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030 *ET SEQ.*)

**(Against defendants Michael Greenlee and Healthrev Partners, LLC)**

Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as though fully set forth herein.

74. Upon information and belief, Defendant Greenlee, knowingly and intentionally exceeded his authorized accessed to the HCF's protected Computer systems.

75. As Greenlee is the founder and CEO of HRP, knowledge and intent attributable to Greenlee is attributable to HRP.

76. Upon information and belief, Defendants, without authorization, knowingly and intentionally accessed the HCF's protected Computer systems.

77. Defendant Greenlee, on November 5, 8, 11, 18 and 19, 2019, copied and downloaded to his personal email, without authorized access and exceeding his authorized access,

HCF's confidential and proprietary customer lists, and marketing and training materials for his personal financial gain.

78. Defendant HRP, with Defendant Greenlee acting as its CEO and for the benefit of HRP, knowingly and intentionally received and used the protected confidential and proprietary customer lists, and marketing and training materials for its own personal financial gain.

79. Defendant HRP had actual knowledge that Defendant Greenlee copied and downloaded to his personal email, without authorized access and exceeding his authorized access, HCF's confidential and proprietary customer lists, and marketing and training materials for his and HRP's personal financial gain.

80. Defendants' conduct, whether alone or in concert, caused HCF to incur damages in the form of investigating and responding to the unauthorized access, as well as investigating and responding to the access in excess of authorization.

81. This response and investigation continues and the full level of damage as a result of the unauthorized access is still unknown.

82. Defendants have realized a competitive advantage and, upon information and belief, have increased revenues in excess of $5,000.00 as a result of the use of HCF's confidential and proprietary data.

83. As a result of Defendants' unauthorized, intentional access, as well as their access in excess of authorization, of HCF's protected confidential and proprietary information, HCF has suffered damages and a loss of no less than $5,000.00 in the last year prior to

filing this Complaint, including but not limited to its costs to address Defendants' statutory violations, contract breaches, and unlawful conduct.

84. As a result of the foregoing, HCF seeks their compensatory damages in an amount to be determined at trial.

85. Defendants acted knowingly, willfully, wantonly, outrageously, maliciously, intentionally, and recklessly in disregarding the rights of HCF, and, thus, HCF should be entitled to an award of punitive damages as well.

WHEREFORE, Plaintiff HEALTHCARE*first*, Inc., prays for judgment against Defendants HealthRev Partners, LLC, and Michael Greenlee in an amount to be proven at trial in excess of Five Thousand Dollars ($5,000.00) for loss of goodwill, harm to reputation, the costs of its response and investigation to this offense, for reasonable attorneys' fees and costs and necessary expenses incurred, for court costs, and for such other and further relief as the court deems just and proper.

## COUNT II

## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. 1833 ET SEQ.

### (Against defendants Michael Greenlee and Healthrev Partners, LLC)

Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as though fully set forth herein.

86. HCF's confidential and proprietary information and information regarding customer lists, prospective customers, bids, opportunities, and financial data constitutes trade

secrets as defined in the Defend Trade Secrets Act, 18 U.S.C. § 1833, et seq. ("DTSA"). This information has independent economic value because it is not generally known to and readily ascertainable by proper means by other persons who can obtain economic value from its use.

87. HCF takes reasonable measures to protect the confidentiality of its trade secrets, including the use of non-disclosure covenants and password-protected computers.

88. HCF's trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce.

89. Greenlee had access to trade secret information while they worked for HCF, which was provided exclusively in the furtherance of HCF's business. Upon information and belief, Defendants acquired, misappropriated, and/or threatened to misappropriate HCF's trade secrets by acquiring and disclosing the trade secrets through improper means.

90. Upon information and belief, during and/or after the termination of Greenlee's employment relationship with HCF, Defendants continued to unlawfully access HCF's trade secrets and misappropriate HCF's trade secrets through improper means and for his own benefit and use, and on behalf of and for the benefit and use of himself and HealthRev Partners, LLC.

91. Upon information and belief, Greenlee misappropriated HCF's trade secrets by, among other things, disclosing and using HCF's trade secrets without HCF's consent, when he knew or had reason to know that the trade secrets were acquired through improper means, or were acquired under certain circumstances giving rise to a duty to maintain

their secrecy and/or limit their use, or acquired by a person who owed a duty to HCF to maintain their secrecy or limit their use.

92. As Greenlee is the founder and CEO of HRP, knowledge and intent attributable to Greenlee is attributable to HRP.

93. Defendants willfully violated the provisions of the DTSA by engaging in conduct that misappropriates trade secrets and threatens the misappropriation of trade secrets belonging to HCF, which are not generally available to the public, and which have been developed or acquired by HCF through great effort and expense.

94. Unless Defendants are enjoined from engaging in conduct that discloses and uses HCF's trade secrets, HCF will continue to be immediately and irreparably harmed since a competitor will receive and have the use of the trade secret information developed and maintained by HCF that is not generally known to the public or the competitor through proper means, and the Defendants will be able to use such trade secrets to their economic advantage and to HCF's detriment.

95. As a direct and proximate result of Defendants' breach or threatened breach of HCF's trade secrets, HCF has suffered and will continue to suffer damages, and additional and substantial irreparable harm.


WHEREFORE, Plaintiff HEALTHCARE*first*, Inc., prays for judgment against Defendants HealthRev Partners, LLC, and Michael Greenlee in an amount to be proven at trial in excess of Seventy-Five Thousand Dollars ($75,000.00) for loss of goodwill and harm to reputation; actual loss caused by the misappropriation of trade secrets; attorneys' fees; an

award of damages for unjust enrichment caused by the misappropriation of trade secrets; an award of exemplary damages as provided by 18 U.S.C. § 1836(b)(3); an order for court costs and taxable expenses; and for such other and further relief as the court deems just and proper.

## COUNT III

## BREACH OF CONTRACT

### (Against defendant Michael Greenlee)

Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as though fully set forth herein.

96. Defendant agreed to abide by the terms of the NC, ND, NS and Release Agreements, including the non-competition, non-solicitation, proprietary interests and confidentiality provisions contained therein.

97. The NC, ND, NS and Release Agreements, including the non-competition, non-solicitation, proprietary interests and confidentiality provisions, constitute valid, enforceable contracts supported by adequate consideration.

98. The non-competition, non-solicitation, proprietary interests and confidentiality provisions are reasonable and no greater than fairly required to protect and preserve HCF's legitimate protectable interests, particularly its confidential software and technology, goodwill among customers, and its relationships and contacts with its customers.

99. HCF has fulfilled all of its obligations under the NC, ND, NS and Release Agreements and all other conditions precedent to the operation of the NC, ND, NS and Release Agreements have occurred or taken place.

100. The conduct of Defendant Greenlee described herein has caused and/or threatened to cause HCF's customers to cease doing business with HCF and/or has reduced the volume of business they are doing with HCF and/or the loss of business from potential customers and/or has caused and/or threatened to cause a loss of goodwill, thereby damaging HCF.

101. As a direct and proximate result of Defendant's breach, HCF has suffered and will continue to suffer monetary damages, including but not limited to, use of its Proprietary Information, disclosure of its Confidential Information, lost profits, and a loss of goodwill. The continued loss of business as a result of Defendant's violation of the NC, ND, NS and Release Agreements could lead to a substantial decrease in the volume of business.

102. The conduct of Defendant has violated and continues to violate the legitimate protectable interests of HCF due to his breaches of the NC, ND and NS Agreements, including but not limited to, its right to protect its confidential software and technology, customer contacts, and goodwill. As a result of Defendant's actions, HCF is and shall continue to be adversely and irreparably affected. Unless the injunction prayed for herein is granted, HCF will be further irreparably injured and damaged.

WHEREFORE, Plaintiff HEALTHCARE*first*, Inc., prays for judgment against Defendant Michael Greenlee in an amount to be proven at trial in excess of Seventy-Five Thousand Dollars ($75,000.00) for loss of goodwill, harm to reputation, for reasonable attorneys' fees and costs and necessary expenses incurred, for court costs, and for such other and further relief as the court deems just and proper.

## COUNT IV

## VIOLATION OF MISSOURI TRADE SECRETS ACT
## § 417.450, RSMO *ET SEQ*.

**(Against defendants Michael Greenlee and Healthrev Partners, LLC)**

Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as though fully set forth herein.

103.   During his employment with HCF, Greenlee had access to or obtained Confidential Information of HCF.

104.   As Greenlee is the founder and CEO of HRP, knowledge and intent attributable to Greenlee is attributable to HRP.

105.   Greenlee promised in the NC, ND, NS and Release Agreements that he would not use such trade secret or other confidential information or disclose it to any person, firm, or institution during the course of and upon the termination of his employment. Such information derives independent economic value because such information is not generally known to or ascertainable by other persons who could obtain economic value from its disclosure or use.

106. HRP has knowledge of Greenlee's promises in the NC, ND, NS and Release Agreements.

107. Greenlee had and continues to have a duty and obligation to not use or disclose HCF's trade secret or other confidential information, documents, and property, which is protected by the common law of the State of Missouri and, by virtue of its composition, content, and nature, constitutes trade secrets pursuant to the Missouri Uniform Trade Secrets Act, § 417.450, RSMo et seq.

108. HRP has knowledge of Greenlee's continuing duties to HCF.

109. HRP knows of Greenlee's misappropriation of trade secrets and breach of the NC, ND, NS and Release Agreements concerning those trade secrets from HCF.

110. HRP and Greenlee's misappropriation was for the purpose of the solicitation of business and sales from HCF's existing or potential customers.

111. To allow Defendants to obtain substantial benefit from such protected information of HCF would unjustly enrich Defendants at HCF's expense.

112. The aforesaid acts of Defendants were without the knowledge, consent, or authorization of HCF and constitute misappropriation of the property, business value and goodwill of HCF in violation of the common law of the State of Missouri and § 417.450, RSMo et seq.

113. As a result of Defendants' actions and conduct in misappropriating HCF's proprietary and confidential trade secret information, its documents and property, HCF has, is and shall continue to sustain damage in the future, including loss and wrongful

use of property, lost profits, lost goodwill and lost competitive advantage suffered prior to its receiving injunctive relief in an amount that cannot be known with certainty.

114. The misappropriation of HCF's trade secrets by Defendants is outrageous because of Defendant's evil motives or reckless indifference to HCF's rights, and warrants the imposition of punitive damages so as to punish Defendants and to deter them and others from such outrageous conduct in the future.

115. As a result of Defendants' actions and conduct in misappropriating HCF's proprietary and confidential trade secret information, its software and property, HCF is and shall continue to be subject to immediate irreparable harm and damage including loss of confidential information, property and equipment, current and future business, and diversion and interference with existing and prospective business relationships, unless this Court in the exercise of equitable jurisdiction, grants to HCF the injunctive relief prayed for herein.

116. HCF will suffer irreparable harm if Defendants are permitted to continue to operate in violation of both § 417.450, RSMo et seq. and the common law of the State of Missouri.

117. Unless enjoined, Defendants will persist, to HCF's continuing harm, in the above-described unlawful behavior, for the redress of which HCF has no adequate remedy at law.

118. The harm which HCF may suffer if Defendants are not restrained as requested herein far outweighs the harm Defendants would suffer from the entry of such injunctive relief.

119. Through the factual allegations contained herein, HCF has established a likelihood of success on the merits, that there exists no adequate remedy at law, and a balancing of the equities favors the entry of an injunction against Defendants.

120. By reasons of the acts alleged herein, HCF has been injured and damaged in an amount to be determined at trial and because its remedy at law is inadequate, seeks injunctive relief to protect its confidential, proprietary and competitively valuable customer and supplier information, its goodwill, and other legitimate business interests.

WHEREFORE, Plaintiff HEALTHCARE*first*, Inc., prays for judgment against Defendants HealthRev Partners, LLC, and Michael Greenlee in an amount to be proven at trial in excess of Seventy-Five Thousand Dollars ($75,000.00) for loss of goodwill, harm to reputation, for reasonable attorneys' fees and costs and necessary expenses incurred, for court costs, and for such other and further relief as the court deems just and proper.

## COUNT V

## TORTIOUS INTERFERENCE WITH CONTRACT

### (Against Healthrev Partners, LLC)

Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as though fully set forth herein.

121. Valid and enforceable contracts, the NC, ND, NS and Release Agreements, existed between Michael Greenlee and HCF.

122. Michael Greenlee breached the NC, ND, NS and Release Agreements as aforesaid.

123. HRP, being founded by Greenlee, had knowledge of the NC, ND, NS and Release Agreements.

124. HRP, by employing Greenlee as its CEO in a business that competes with HCF and by employing Greenlee to solicit for marketing HCF's customers and utilize HCF's confidential information, caused Greenlee to breach the contracts between HCF and Greenlee.

125. HRP had no justification or excuse for doing so since HCF gave no justification or excuse to HRP or Greenlee.

126. As a result of Defendant's actions and conduct in causing Greenlee to breach his contracts with HCF by soliciting HCF's customers and utilizing proprietary and confidential trade secret information, its documents and property, HCF has, is and shall continue to sustain damage in the future, including loss and wrongful use of property, lost profits, lost goodwill and lost competitive advantage suffered prior to its receiving injunctive relief in an amount that cannot be known with certainty.

127. The actions by HRP are outrageous because of Defendant HRP's evil motives or reckless indifference to HCF's rights, and warrants the imposition of punitive damages so as to punish Defendant HRP and to deter HRP and others from such outrageous conduct in the future.

128. As a result of Defendant's actions and conduct in causing Greenlee to breach his contracts with HCF and solicit HCF's customers and utilize HCF's proprietary and confidential trade secret information, its software and property, HCF is and shall continue to be subject to immediate irreparable harm and damage including loss of

confidential information, property and equipment, current and future business, and diversion and interference with existing and prospective business relationships, unless this Court in the exercise of equitable jurisdiction, grants to HCF the injunctive relief prayed for herein.

129. HCF will suffer irreparable harm if HRP is permitted to continue to tortuously interfere with HCF's contract with Greenlee in violation of the common law of the State of Missouri.

130. Unless enjoined, Defendant HRP will persist, to HCF's continuing harm, in the above-described unlawful behavior, for the redress of which HCF has no adequate remedy at law.

131. The harm which HCF may suffer if Defendant HRP is not restrained as requested herein far outweighs the harm Defendant HRP would suffer from the entry of such injunctive relief.

132. Through the factual allegations contained herein, HCF has established a likelihood of success on the merits, that there exists no adequate remedy at law, and a balancing of the equities favors the entry of an injunction against Defendant HRP.

133. By reasons of the acts alleged herein, HCF has been injured and damaged in an amount to be determined at trial and because its remedy at law is inadequate, seeks injunctive relief to protect its confidential, proprietary and competitively valuable customer and supplier information, its goodwill, and other legitimate business interests.

WHEREFORE, Plaintiff HEALTHCARE*first*, Inc., prays for judgment against Defendant HealthRev Partners, LLC, in an amount to be proven at trial in excess of Seventy-Five Thousand Dollars ($75,000.00) for loss of goodwill, harm to reputation, for reasonable attorneys' fees and costs and necessary expenses incurred, for court costs, and for such other and further relief as the court deems just and proper.

## COUNT VI

### TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

**(Against defendants Michael Greenlee and Healthrev Partners, LLC)**

Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as though fully set forth herein.

134.    HCF has a valid business expectancy to continue doing business with its regular customers.

135.    Defendants breached the NC, ND, NS and Release Agreements as aforesaid by soliciting HCF's regular customers.

136.    Defendants, having knowledge of and having signed the NC, ND, NS and Release Agreements, had knowledge of HCF's business expectancy to continue doing business with its regular customers.

137.    On information and belief, by founding HRP and soliciting HCF's regular customers, Defendants caused HCF to lose customers.

138.    Defendants had no justification or excuse for doing so since HCF gave no justification or excuse to HRP or Greenlee.

139.   As a result of Defendants' actions and conduct in soliciting HCF's customers and utilizing proprietary and confidential trade secret information, its documents and property, HCF has, is and shall continue to sustain damage in the future, including loss and wrongful use of property, lost profits, lost goodwill and lost competitive advantage suffered prior to its receiving injunctive relief in an amount that cannot be known with certainty.

140.   The actions by Defendants are outrageous because of Defendants' evil motives or reckless indifference to HCF's rights, and warrants the imposition of punitive damages so as to punish Defendants and others from such outrageous conduct in the future.

141.   As a result of Defendants' actions and conduct in soliciting HCF's customers and utilizing HCF's proprietary and confidential trade secret information, its software and property, HCF is and shall continue to be subject to immediate irreparable harm and damage including loss of confidential information, property and equipment, current and future business, and diversion and interference with existing and prospective business relationships, unless this Court in the exercise of equitable jurisdiction, grants to HCF the injunctive relief prayed for herein.

142.   HCF will suffer irreparable harm if Defendants are permitted to continue to tortuously interfere with HCF's business expectancy in violation of the common law of the State of Missouri.

143.   Unless enjoined, Defendants will persist, to HCF's continuing harm, in the above-described unlawful behavior, for the redress of which HCF has no adequate remedy at law.

144. The harm which HCF may suffer if Defendants are not restrained as requested herein far outweighs the harm Defendants would suffer from the entry of such injunctive relief.

145. Through the factual allegations contained herein, HCF has established a likelihood of success on the merits, that there exists no adequate remedy at law, and a balancing of the equities favors the entry of an injunction against Defendants.

146. By reasons of the acts alleged herein, HCF has been injured and damaged in an amount to be determined at trial and because its remedy at law is inadequate, seeks injunctive relief to protect its confidential, proprietary and competitively valuable customer and supplier information, its goodwill, and other legitimate business interests.

WHEREFORE, Plaintiff HEALTHCARE*first*, Inc., prays for judgment against Defendants Michael Greenlee and HealthRev Partners, LLC in an amount to be proven at trial in excess of Seventy-Five Thousand Dollars ($75,000.00) for loss of goodwill, harm to reputation, for reasonable attorneys' fees and costs and necessary expenses incurred, for court costs, and for such other and further relief as the court deems just and proper.

## COUNT VII

## PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION

### (Against defendants Michael Greenlee and Healthrev Partners, LLC)

Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as though fully set forth herein.

147.   The employment by HRP of Greenlee in business in direct competition with HCF within the one hundred (100) mile radius of the Springfield HCF office, or any affiliated HCF office, or any customer that Greenlee had contact with is a direct violation of the express terms of the NC, ND, NS and Release Agreements.

148.   HRP and Greenlee's conduct in contacting and soliciting existing customers of HCF to become customers of HRP, and their interfering with HCF's customer relations as aforesaid, are direct violations of the express terms of the NC, ND, NS and Release Agreements.

149.   Greenlee has violated the express terms of the NC, ND, NS and Release Agreements and HRP has conspired with him through Greenlee's founding and employment as CEO by HRP, who is engaged in direct competition with HCF, by contacting HCF's customers and soliciting them away to HCF, by interfering with HCF's customer relations and by utilizing HCF's confidential and proprietary information for his own use and the use of his new employer, HRP.

150.   HCF has no adequate remedy at law to prevent HRP and Greenlee's wrongful conduct as described above.  Specifically, the conduct of Greenlee and HRP acting individually, as an employee and as an agent and joint venture with others in competing with HCF in the one hundred (100) mile radius restricted area and in diverting or attempting to divert and appropriate the customers of the HCF and using HCF's confidential information have caused irreparable harm and damage and will cause harm and damage to HCF by causing a loss of good will, loss of existing customers, loss of

potential customers, harm to reputation and loss of profits which are irreparable and continuing.

151.  Greenlee agreed in the NC, ND, NS and Release Agreements that HCF shall be entitled to reasonable attorney's fees, costs, and necessary expenses, in addition to any other relief which HCF may be entitled and specifically agreed to injunctive relief.

WHEREFORE, Plaintiff HEALTHCARE*first*, Inc. prays that this court enter the following orders and relief:

A.  This Court enter a preliminary injunction, and then a permanent injunction, prohibiting Defendants Michael Greenlee and HEALTHREV Partners, LLC, whether acting individually, indirectly or in concert or participation with others, and any other person or entities in active participation with Defendants from the following:

     i.  For a period until after at least November 19, 2021, within a one hundred (100) mile radius of any offices of HEALTHCARE*first*, Inc., or their affiliates, and of any and all HCF customer accounts that Greenlee had any contact with, directly or indirectly owning (either in whole or in part), providing services as a consultant or independent contractor or being employed by any corporation, partnership, proprietorship or other business entity that is engaged in the marketing or promotion of any types of services or products involving home health and hospice agencies paperwork management services, including but not limited to revenue cycle management services, CAHPS and advanced analytics solutions for home health and hospice agencies nationwide, including specifically, but not limited to, employment by HRP and any of its affiliates; and

     ii.  For a period until at least November 19, 2021, directly or indirectly inducing, soliciting, requesting or advising any customers or vendors of HEALTHCARE*first*, Inc., or its Affiliates to patronize any other entity or to withdraw, curtail or cancel any business or contracts with HEALTHCARE *First*, Inc., or its Affiliates; and

Case 6:20-cv-03243-RK   Document 1   Filed 08/07/20   Page 37 of 40

iii.    For a period until at least November 19, 2021, disclosing to any other person, firm, or corporation the names or addresses of any customer or vendors of HEALTHCARE*first*, Inc., or its Affiliates; and

iv.    For a period until at least November 19, 2021, pursuing or obtaining for their own use or benefit, or the use and benefit of any other person or business, any business opportunity of HEALTHCARE*First*, Inc., or its Affiliates which he was aware of during his employment with HEALTHCARE*first*, Inc., and

v.    For a period until at least November 19, 2021, pursuing, contacting, soliciting, or otherwise seeking to obtain, whether for themselves or for any other person, firm or organization, any business or accounts of any customer of HEALTHCARE*first*, Inc., or its Affiliates that was active with HEALTHCARE*first*, Inc., or its Affiliates as of May 1, 2017 or any time thereafter; and

vi.    For a period until at least November 19, 2021, inducing, soliciting, requesting or advising any employees of HEALTHCARE*first*, Inc., or its Affiliates to seek or accept employment with any other person, firm or business which directly or indirectly competes against Plaintiff; and

vii.    Directly or indirectly soliciting any employee of HEALTHCARE*first*, Inc., or its Affiliates to terminate his or her employment relationship with HEALTHCARE*first*, Inc., or its Affiliates; and

viii.    Disclosing directly or indirectly to the public or to any persons or entities any proprietary or confidential information of HEALTHCARE*first*, Inc., or its Affiliates relating to the business of HEALTHCARE*first*, Inc., or its Affiliates including, without limitation, know how, processes, ideas, inventions (whether patentable or not), business, financial, customer and product development plans, customer lists, forecasts, strategies and information to the extent previously, presently or subsequently disclosed to Defendants.

B.    That the Court extend any of the time period restrictions on HRP or Michael Greenlee's conduct by the time during which Greenlee has been found to be in violation of his Confidentiality and Non-Competition Agreement with HEALTHCARE*first*, Inc., so that HCF shall obtain the full restrictive period that it bargained for.

C.     That the court award Plaintiff its attorneys' fees, necessary expenses, costs and court costs, and such other and further relief as the court deems just and proper and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff HCF prays for the following relief:

(a) a Preliminary and Permanent Injunction enjoining Defendants, according to the terms set forth in the NC, ND, NS and Release Agreements (and extended for the time periods allowed for therein);

(b) an order requiring Defendants to immediately return all proprietary, confidential, and trade secret information belonging to HCF;

(c) an award as and for HCF's actual, compensatory, and economic damages, including pre- and post-judgment interest;

(d) insofar as Defendants' wrongful conduct is willful, wanton, malicious, and done with the intent of causing injury, HCF is entitled to an award of punitive damages against Defendants;

(e) to the extent that HCF has been required to retain the services of the undersigned attorneys to bring the present action and has agreed to pay them reasonable attorney's fees for their services, and to the extent authorized by statute, contract or otherwise, HCF also seeks an award for its reasonable and necessary attorney's fees and court costs and expenses incurred in connection with this lawsuit; and

(f) for further relief as the Court deems just and reasonable.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.

By: _____*/s/ James M. Paul*_____
James M. Paul, MO 44232
Sean J. Oliveira, MO 72056
7700 Bonhomme Avenue, Suite 650
St. Louis MO,  63105
Telephone:  314.802.3935
Facsimile:  314.802.3960
james.paul@ogletreedeakins.com
sean.oliveira@ogletreedeakins.com

-and-

____*/s/ Tina G. Fowler*_____
Tina G. Fowler, MO 48522
Baird Lightner Millsap
1901C South Ventura
Springfield, MO 65804
Office: 417.887.0133
Fax: 417.887.8740
tfowler@blmlawyers.com

Attorneys for Plaintiff HEALTHCARE*first*,
Inc.

43775834.2

40