DocuSign Envelope ID: BC2BCBB6-3565-4A72-A124-1D1E942E744F



# NON-DISCLOSURE AGREEMENT

This Confidentiality and Invention Assignment Agreement ("Agreement") is between **HEALTHCARE***first*, Inc., a Texas corporation having its principal place of business at 1343 E. Kingsley St., Springfield, Missouri 65804 ("Company") and the undersigned individual, __Michael Greenlee__, ("Employee") effective as of __05/01/2017__ (the "Effective Date").

## RECITALS

**WHEREAS**, Company has employed Employee, and Employee acknowledges that it is employed, on an at-will basis;

**WHEREAS**, Employee has performed various tasks for Company, at the request and direction of the Company and within the scope of Employee's employment with the Company, in connection with the business of the Company;

**WHEREAS**, Company desires for Employee to continue to perform tasks for and provide services to Company and Employee wishes to do so;

**NOW, THEREFORE,** in consideration of the mutual covenants contained herein, continued employment, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## AGREEMENT

1. **Proprietary Information.** Employee agrees during the term of its employment with Company and thereafter that it will take all steps reasonably necessary to hold Company's Proprietary Information in trust and confidence, will not use Company Proprietary Information in any manner or for any purpose not expressly set forth in this Agreement, and will not disclose any such Company Proprietary Information to any third party without first obtaining Company's express written consent on a case-by-case basis. By way of illustration, but not limitation, "**Company Proprietary Information**" includes the following, whether owned by, possessed by or in control of the Company, its subsidiaries, affiliates, or parents: (a) trade secrets (including ideas, research and development, recipes, know-how, formulae, compositions, manufacturing and production processes and techniques, technical data, designs, drawings, specifications, customer and supplier lists, pricing and cost information, business and marketing plans and proposals where a trade secret under law), technologies, processes, formulae, algorithms, industrial models, architectures, layouts, look-and-feel, designs, specifications, methodologies, internet domain names, URLs, software or software applications (including source code, object code, other executable code, scripts, interfaces, data, databases, websites, firmware and related documentation), artwork, inventions, mask works, ideas, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques (hereinafter collectively referred to as "**Inventions**"); (b) information regarding plans for research, development, new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, contracts, prices and costs, suppliers and customers; and (c) information regarding the skills and compensation of employees of Company.

DocuSign Envelope ID: BC2BCBB6-3565-4A72-A124-1D1E942E744F



# NON-DISCLOSURE AGREEMENT

Notwithstanding the other provisions of this Agreement, nothing received by Employee will be considered to be Company Proprietary Information if: (a) it has been published or is otherwise readily available to the public other than by a breach of this Agreement; (b) it has been rightfully received by Employee from a third party without confidential limitations; (c) it has been independently developed for Employee by personnel or agents having no access to the Company Proprietary Information; or (d) it was known to Employee prior to its first receipt from Company.

    **2.** **Third Party Information.** Employee understands that Company has received and will in the future receive from third parties confidential or Proprietary Information ("**Third Party Information**") subject to a duty on Company's part to maintain the confidentiality of such information and use it only for certain limited purposes. Employee agrees to hold Third Party Information in confidence and not to disclose to anyone (other than Company personnel who need to know such information in connection with their work for Company) or to use, except in connection with Employee's work for Company, Third Party Information unless expressly authorized in writing by an officer of Company.

    **3.** **No Disclosure or Conflict.** Employee warrants that there is no other existing contract or duty on Employee's part inconsistent with this Agreement. Employee further agrees not to disclose to Company, or bring onto Company's premises, or induce Company to use any confidential or Proprietary Information that belongs to anyone other than Company or Employee.

    **4.** **Disclosure of Work Product.** As used in this Agreement, the term "**Work Product**" means any Invention, whether or not patentable, and all related documents, code, work of authorship, know-how, designs, artwork, or other copyrightable or patentable works, whether patented or not. Employee agrees to disclose promptly in writing to Company, or any person designated by Company, all Work Product which is solely or jointly conceived, made, reduced to practice, or learned by Employee in the course of any work performed during Employee's employment with Company or within one (1) year following termination of Employee's employment with Company ("**Company Work Product**"). Employee also agrees to disclose promptly in writing to Company, or any person designated by Company, all Company Work Product which is solely or jointly conceived, made, reduced to practice, or learned by Employee in the course of any work performed for the Previous Developments, as hereafter defined.

    **5.** **Assignment of Company Work Product**

    **a)** Employee agrees that upon conception and/or development of any idea, discovery, invention, improvement, software, writing or other material or design or other Company Work Product during Employee's employment with the Company or within one (1) year following termination of Employee's employment with the Company that: (A) relates to the business of the Company, or (B) relates to the Company's actual or demonstrably anticipated research or development, or (C) results from any work performed by Employee for the Company, Employee will assign to the Company the entire right, title and interest in and to any such idea, discovery, invention, improvement, software, writing or other material or design. Employee has no obligation to assign any idea, discovery, invention, improvement, software, writing or other material or design that Employee conceives and/or develops entirely on Employee's own time without using the Company's equipment, supplies, facilities, or trade secret information unless the



# NON-DISCLOSURE AGREEMENT

idea, discovery, invention, improvement, software, writing or other material or design either: (x) relates to the business of the Company, or (y) relates to the Company's actual or demonstrably anticipated research or development, or (z) results from any work performed by Employee for the Company. Employee agrees that any idea, discovery, invention, improvement, software, writing or other material or design that is conceived of or developed and relating to the business of the Company, or relates to the Company's actual or demonstrably anticipated research or development which is conceived or suggested by Employee, either solely or jointly with others, during Employee's employment with the Company or within one (1) year following termination of Employee's employment with the Company shall be presumed to have been so made, conceived or suggested in the course of such employment with the use of the Company's equipment, supplies, facilities, and/or trade secrets. Employee irrevocably assigns to Company all right, title and interest worldwide in and to such Company Work Product and all applicable intellectual property rights related to such Company Work Product, including without limitation, copyrights, trademarks, trade secrets, patents, moral rights, contract and licensing rights (the "**Proprietary Rights**"). Employee retains no rights to use the Company Work Product and agrees not to challenge the validity of Company's ownership in the Company Work Product.

      b) In order to determine the rights of Employee and the Company in any idea, discovery, invention, improvement, software, writing or other material, and to insure the protection of the same, Employee agrees that during Employee's employment with the Company, and for one (1) year after termination of Employee's employment with the Company, Employee will disclose immediately and fully to the Company any idea, discovery, invention, improvement, software, writing or other material or design conceived, made or developed by Employee solely or jointly with others that (A) relates to the business of the Company, (B) relates to the Company's research or development, or (C) results from the work performed for the Company. The Company agrees to keep any such disclosures confidential. Employee also agrees to record descriptions of all work in the manner directed by the Company and agrees that all such records and copies, samples and experimental materials will be the exclusive property of the Company. Employee agrees that at the request of and without charge to the Company, but at the Company's expense, Employee will execute a written assignment of the idea, discovery, invention, improvement, software, writing or other material or design to the Company and will assign to the Company any application for letters patent or for trademark registration made thereon, and to any common-law or statutory copyright therein; and that Employee will do whatever may be necessary or desirable to enable the Company to secure any patent, trademark, copyright, or other property right therein in the United States and in any foreign country, and any division, renewal, continuation, or continuation in part thereof, or for any reissue of any patent issued thereon. In the event the Company is unable, after reasonable effort, and in any event after ten (10) business days, to secure Employee's signature on a written assignment to the Company of any application for letters patent or to any common-law or statutory copyright or other property right therein, whether because of Employee's physical or mental incapacity or for any other reason whatsoever, Employee irrevocably designates and appoints the Corporate Secretary of the Company as Employee's attorney-in-fact to act on Employee's behalf to execute and file any such application and to do all other lawfully permitted acts to further the prosecution and issuance of such letters patent, copyright or trademark.

DocuSign Envelope ID: BC2BCBB6-3565-4A72-A124-1D1E942E744F



# NON-DISCLOSURE AGREEMENT

**c)** This assignment includes (a) all rights of attribution, paternity, integrity, disclosure and withdrawal, (b) any rights under the Visual Artists Rights Act of 1990 or similar federal, state, foreign or international laws or treaties, and (c) all other rights throughout the world sometimes referred to as "moral rights" (collectively "**Moral Rights**"). To the extent that Moral Rights cannot be assigned under applicable law, Consultant hereby waives such Moral Rights to the extent permitted under applicable law and consents to any and all actions of the Company that would otherwise violate such Moral Rights.

**d)** Employee acknowledges that, to the extent permitted by law, all work papers, reports, documentation, drawings, photographs, negatives, tapes and masters therefor, prototypes and other materials (hereinafter, "*items*"), including without limitation, any and all such items generated and maintained on any form of electronic media, generated by Employee during Employee's employment with the Company that (A) relates to the business of the Company, (B) relates to the Company's research or development, or (C) results from the work performed for the Company shall be considered a *"work made for hire"* and that ownership of any and all copyrights in any and all such items shall belong to the Company. The item will recognize the Company as the copyright owner, will contain all proper copyright notices, e.g., "(creation date) HEALTHCARE*first*, Inc., All Rights Reserved," and will be in condition to be registered or otherwise placed in compliance with registration or other statutory requirements throughout the world.

**6.** **Assignment of Previous Developments.** Employee hereby irrevocably assigns to Company all right, title and interest, that Employee may have, worldwide in and to any and all ideas, discoveries, inventions, improvements, software, writing or other materials or designs or other work product previously conceived of and/or developed, while employed by the Company, or any subsidiary, affiliate, or parent, that: (A) relate to the business of the Company or any subsidiary, affiliate or parent,, or (B) relate to the Company's or any subsidiary, affiliate or parent, actual or demonstrably anticipated research or development, or (C) result from any work performed by Employee for the Company or any subsidiary, affiliate or parent, prior to the Effective Date of this Agreement ("**Previous Developments**"). Employee will assign to the Company the entire right, title and interest in and to any such idea, discovery, invention, improvement, software, writing or other material or design in the Previous Developments and all applicable Proprietary Rights related to or embodied in the Previous Developments. Employee retains no rights to use the Previous Developments and agrees not to challenge the validity of Company's ownership of the Previous Developments. Employee agrees that any and all Company Work Product and Previous Developments conceived, written, created or first reduced to practice in the performance of work for Company shall be the sole and exclusive property of Company.

**7.** **Waiver of Other Rights.** If Employee has any rights to the Company Work Product or Previous Developments that cannot be assigned to Company, Employee unconditionally and irrevocably waives the enforcement of such rights, and all claims and causes of action of any kind against Company with respect to such rights, and agrees, at Company's request and expense, to consent to and join in any action to enforce such rights. If Employee has any rights to the Company Work Product or Previous Developments that cannot be assigned to Company or waived by Employee, Employee unconditionally and irrevocably grants to Company during the term of such rights, an exclusive, irrevocable, perpetual, worldwide, fully paid and royalty-free license, with rights to sublicense through multiple levels of



NON-DISCLOSURE AGREEMENT

sublicensees, to reproduce, create derivative works of, distribute, publicly perform and publicly display by all means now known or later developed, such rights.

8. **Assistance.** Employee agrees to cooperate with Company or its designee(s), both during and after Employee's employment with the Company, in the procurement and maintenance of Company's rights in both Company Work Product and the Previous Developments including, but not limited to, executing, when requested, any other documents deemed necessary by Company to carry out the purpose of this Agreement.  Employee will assist Company in every proper way to obtain, and from time to time enforce, United States and foreign Proprietary Rights relating to Company Work Product and Previous Developments in any and all countries.  Employee hereby waives and quitclaims to Company any and all claims, of any nature whatsoever, which Employee now or may hereafter have for infringement of any Proprietary Rights assigned hereunder to Company.

9. **Employee Representations and Warranties.**  Employee hereby represents and warrants that:  (a) the Company Work Product and Previous Developments are and will be an original works of Employee and any third parties will have executed assignment of rights reasonably acceptable to Company; (b) Company Work Product, the Previous Developments and any element thereof will not infringe the Proprietary Rights of any third party; (c) Company Work Product, the Previous Developments and  any element thereof will not be subject to any restrictions or to any mortgages, liens, pledges, security interests, encumbrances or encroachments; (d) Employee will not grant, directly or indirectly, any rights or interest whatsoever in the Company Work Product or Previous Developments to third parties; (e) Employee has full right and power to enter into and perform this Agreement without the consent of any third party; (f) Employee will take all necessary precautions to prevent injury to any persons (including employees of Company) or damage to property (including Company's property) during the term of this Agreement; and (g) should Company permit Employee to use any of Company's equipment, tools, or facilities during Employee's employment, such permission shall be gratuitous and Employee shall be responsible for any injury to any person (including death) or damage to property (including Company's property) arising out of use of such equipment, tools or facilities, whether or not such claim is based upon its condition or on the alleged negligence of  Company in permitting its use.  Employee understands and agrees that the decision whether or not to commercialize or market any Company Work Product, Previous Developments and any element thereof, whether developed by Employee solely or jointly with others, is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to Employee as a result of the Company's efforts to commercialize or market any such Company Work Product, Previous Development and any element thereof.

10. **Return of Company Property.**  Upon termination of Employee's employment with Company, or earlier as requested by Company, Employee will deliver to Company any and all data, software, drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies thereof, and any other material containing or disclosing any Company Work Product, Previous Developments, Third Party Information or Proprietary Information of Company.  Employee further agrees that any property situated on Company's premises and owned by Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice.

DocuSign Envelope ID: BC2BCBB6-3565-4A72-A124-1D1E942E744F



# NON-DISCLOSURE AGREEMENT

**11. Governing Law.** This Agreement will be governed and construed in accordance with the laws of the State of Missouri, without regard to its conflicts of laws principles. The parties hereby expressly consents to the personal jurisdiction of the state and federal courts located in Missouri for any lawsuit filed arising from or related to this Agreement.

**12. Severability.** In case any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. If, moreover, any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to duration, scope, activity or subject, it shall be construed by limiting and reducing it, so as to be enforceable to the extent compatible with the applicable law as it shall then appear.

**13. Assignment.** This Agreement may not be assigned by Employee without Company's consent, and any such attempted assignment shall be void and of no effect. The Company may assign this agreement without consent of the Employee.

**14. Notices.** All notices, requests and other communications under this Agreement must be in writing, and must be mailed by registered, certified or overnight mail, return receipt requested, or delivered by hand to the party to whom such notice is required or permitted to be given. If mailed, any such notice will be considered to have been given three (3) business days after it was mailed. If delivered by hand, any such notice will be considered to have been given when received by the party to whom notice is given, as evidenced by written and dated receipt of the receiving party. The mailing address for notice to either party will be the address shown on the signature page of this Agreement. Either party may change its mailing address by notice as provided by this section.

**15. Injunctive Relief.** A breach of any of the promises or agreements contained in this Agreement may result in irreparable and continuing damage to Company for which there may be no adequate remedy at law, and Company is therefore entitled to seek injunctive relief as well as such other and further relief as may be appropriate.

**16. Survival**. The following provisions shall survive termination of this Agreement: Paragraphs 1 – 9, 15 and 16.

**17. Export.** Employee agrees not to export, directly or indirectly, any technical data acquired from Company or any products utilizing such data to countries outside the United States, which export may be in violation of the United States export laws or regulations.

**18. Waiver.** No waiver by Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by Company of any right under this Agreement shall be construed as a waiver of any other right. Company shall not be required to give notice to enforce strict adherence to all terms of this Agreement.

DocuSign Envelope ID: BC2BCBB6-3565-4A72-A124-1D1E942E744F



# NON-DISCLOSURE AGREEMENT

**19. Entire Agreement.** This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior discussions between us. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing and signed by the party to be charged.

**20. Successors and Assigns.** This Agreement will be binding upon Employee's heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

**21. Presumption against Drafter.** Each party waives the presumption that this Agreement is presumed to be in favor of the party which did not prepare it, in case of a dispute as to the interpretation of this Agreement.

**22. Representation by Counsel.** Each party acknowledges that it has had the opportunity to be represented by independent counsel in the negotiation of this Agreement, that any such respective attorneys were of its own choosing, that each authorized representative has read this Agreement and that it understands its meaning and legal consequences to each party. Each party warrants and represents that it has consulted with its attorney of choice, or voluntarily chose not to do so, concerning the execution, the meaning and the import of this Agreement, and has read this Agreement and fully understands the terms hereof as signified by its signature below, and is executing the same of its own free will, without any duress or undue influence by the Company or anyone else, for the purposes and consideration herein expressed. Each party warrants and represents that it has had sufficient time to consider whether to enter into this Agreement and that it is relying solely on its own judgment and the advice of its own counsel, if any, in deciding to execute this Agreement. If any or all parties have chosen not to seek counsel, said party or parties hereby acknowledge that it or they refrained from seeking counsel entirely of its or their own volition and with full knowledge of the consequences of such a decision.

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed by themselves or by their duly authorized representative.

**COMPANY:** HEALTHCAREfirst

Printed Name: Kevin Porter

Signature: _DocuSigned by:_ 6E0C1EE2A0F94EB...

Title: Chief Executive Officer

Address: 1343 E. Kingsley St.
Springfield, MO 65804

Date: 4/18/2017

**EMPLOYEE:**

Printed Name: Michael Greenlee

Signature: _DocuSigned by:_ 36DB33497F85416...

Title (if applicable): National RCM Sales Director

Address: 3600 North Fenwicke Street
OZARK Missouri 65721

Date: 4/18/2017