# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| HEALTHCAREFIRST, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 6:20-CV-3243-RK |
| | ) | |
| MICHAEL GREENLEE AND | ) | |
| HEALTHREV PARTNERS, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT'S LEGAL MEMORANDUM IN SUPPORT OF JOINT MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6), OR IN THE ALTERNATIVE MOTIONS FOR MORE DEFINITE STATEMENT PURSUANT TO FED. R. CIV. P. 12(E)**

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.

By:  ___*/s/ James M. Paul*_____
James M. Paul, MO 44232
Sean J. Oliveira, MO 72056
7700 Bonhomme Avenue, Suite 650
St. Louis MO,  63105
Telephone:  314.802.3935
Facsimile:  314.802.3960
james.paul@ogletreedeakins.com
sean.oliveira@ogletreedeakins.com

-and-

___*/s/ Tina G. Fowler*_____
Tina G. Fowler, MO 48522
Baird Lightner Millsap
1901C South Ventura
Springfield, MO 65804
Office: 417.887.0133
Fax: 417.887.8740
tfowler@blmlawyers.com

Attorneys for Plaintiff HEALTHCARE*first*, Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

I.   LEGAL STANDARD .................................................................................................... 1

II.  THE PLAIN MEANING OF THE RELEASE AGREEMENT BARS NONE OF
HEALTHCAREFIRST, INC.'S CLAIMS AND GREENLEE HAS MATERIALLY
BREACHED IT IN ANY EVENT. ................................................................................ 2

    A.   The Release Agreement bars none of Plaintiff's claims because the release language
does not include claims involving restrictive covenants necessarily applying to Greenlee's
*post-employment* conduct.................................................................................................. 3

    *1.   The phrase 'arise as a result of' is distinct from the phrase 'arise out of and the two
cannot be substituted for each other..* ...................................................................... 3

    *2.   The true definitions of 'arise' and 'as a result of' favor a narrower causal
relationship.* ............................................................................................................ 4

    *3.   The integration clause only acts to supersede agreements in connection with
Greenlee's employment, but claims of violation of the restrictive covenants  are not claims
Greenlee is released from so there is nothing about them to  supersede.* ............................. 6

    B.   Insofar as Healthcare*First* alleges that the Release Agreement has been  materially
breached, then Healthcare*First* can properly bring claims that might  have otherwise been
released if Greenlee had not so breached the agreement. ........................................................ 7

    C.   In addition, contrary to what Defendants argue, if the Court holds that  the  Release
Agreement bars some of the claims in Plaintiff's  complaint as a matter  of law, several claims
survive...................................................................................................................... 11

III.   HEALTHCAREFIRST, INC.'S COMPLAINT PLEADS SUFFICIENT FACTS  TO
STATE A PLAUSIBLE CLAIM FOR EACH COUNT ........................................................ 12

    A.   In Counts II and III, Healthcare*First*'s complaint adequately alleges the  existence of
trade secrets, actual or threatened misappropriation, and damages. ..................................... 13

IV.   CONCLUSION .......................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)............................................................................................2

*Barker v. Ceridian Corporation*,
122 F.3d 628 (8th Cir. 1997) .................................................................................5

*Bugg v. Washington Mut. Bank*,
2007 WL 9718033 (W.D. Mo. July 2, 2007)........................................................11

*Cameron Mut. Ins. Co. v. Bower*,
558 S.W.2d 226 (Mo. App. 1977) .........................................................................4

*Campbell v. Shaw*,
947 S.W.2d 128 (Mo. Ct. App. 1997)....................................................................7

*Carboline Co. v. Lebeck*,
990 F. Supp. 762 (E.D. Mo. 1997).........................................................................6

*CRST Expedited, Inc. v. Swift Transportation Co. of Arizona, LLC*,
2019 WL 2929516 (D.N.D. July 8, 2019) .............................................................5

*Dataphase Systems, Inc. v. CL Systems, Inc.*,
640 F.2d 109 (8th Cir. 1981) ...............................................................................15

*DocMagic, Inc. v. Mortg. P'ship of Am., L.L.C.*,
729 F.3d 808 (8th Cir. 2013) ............................................................................2, 3

*Erickson v. Pardus*,
551 U.S. 89 (2007)..................................................................................................2

*Eskridge Enterprises, LLC v. Iqbal*,
2015 WL 12843828 (W.D. Mo. June 24, 2015) ................................................7, 8

*Express Scripts, Inc. v. Maury Cty.*,
2010 WL 1141342 (E.D. Mo. Mar. 22, 2010) ...................................................3, 5

*Farmland Indus., Inc. v. Frazier-Parrott Commodities*,
111 F.3d 588 (8th Cir. 1997) .................................................................................5

*Grassmueck v. Am. Shorthorn Ass'n*,
402 F.3d 833 (8th Cir. 2005) ...............................................................................14

*Greenstreet v. Fairchild*,
313 S.W.3d 163 (Mo. Ct. App. 2010).....................................................................7

Case 6:20-cv-03243-RK    Document 23    Filed 10/30/20    Page 3 of 21

*Helms v. Express Pharmacy Servs. of Missouri, Inc.*,
  2007 WL 541599 (W.D. Mo. Feb. 16, 2007) ...............................................................2

*McKnight v. Midwest Eye Inst. of Kansas City, Inc.*,
  799 S.W.2d 909 (Mo. Ct. App. 1990)........................................................................8

*N.I.S. Corp. v. Swindle*,
  724 F.2d 707 (8th Cir. 1984) ......................................................................................5

*Red Lobster Inns of America, Inc. v. Lawyers Title Ins. Corp.*,
  656 F.2d 381 (8th Cir. 1981) ......................................................................................6

*Resolution Tr. Corp. v. Gibson*,
  829 F. Supp. 1121 (W.D. Mo. 1993) ..........................................................................5

*Richland State Bank v. Household Credit Servs.*,
  340 F. Supp. 2d 1051 (D.S.D. 2004) ..........................................................................4

*Schaefer v. Rivers*,
  965 S.W.2d 954 (Mo. Ct. App. 1998).........................................................................7

*In re Sedalia Farmers' Co-op. Packing & Produce Co.*,
  268 F. 898 (W.D. Mo. 1919) ......................................................................................4

*Servs. of the Ozarks, Inc. v. Copeland*,
  198 S.W.3d 604 (Mo. 2006) .......................................................................................5

*State Line Bag Co., LLC v. CompanionLabs Sys., Inc.*,
  2018 WL 4008992 (W.D. Mo. Aug. 22, 2018).........................................................2

*Stodghill v. Wellston Sch. Dist.*,
  512 F.3d 472 (8th Cir. 2008) ......................................................................................2

*Supermarket Merch. & Supply, Inc. v. Marschuetz*,
  196 S.W.3d 581 (Mo. Ct. App. 2006).........................................................................7

**Other Authorities**

18B Am. Jur. 2d Corporations § 1424 .............................................................................15

*Definition*, Merriam-Webster.com Dictionary, Merriam-Webster,
  https://www.merriam-webster.com/disctionary (last visited September 14,
  2020) .......................................................................................................................4, 6

Restatement (Second) of Contracts § 302 (1981) ............................................................11

iv

**INTRODUCTION**

This lawsuit arises from Defendant Greenlee's unlawful misappropriation and use of Plaintiff HealthCare*First*'s confidential and proprietary information in order to set up his own directly competing company. As a result of these actions, Greenlee is in violation of multiple restrictive covenants and the representations in the Release Agreement he signed with Plaintiff. Furthermore, Greenlee and the company he founded, Defendant HealthRev Partners ("HRP"), are subject to State, Federal and common law claims for this misappropriation and misconduct.

Greenlee and HealthRev Partners ("HRP") attempt to cast Healthcare*First* as a bully seeking to unfairly abuse and punish them. On the contrary, given Greenlee's and HRP's sophistication, this is no David and Goliath case. Instead, Greenlee and HRP utilized clever and unlawful means to breach several contracts entered into by Greenlee and to violate statutory and common law restrictions. Now that Plaintiff has brought legitimate claims, Defendants try to hide behind a mistaken interpretation of a Release Agreement that HRP is not a party to and that Greenlee materially breached. Given the facts of this case, it is clear that Greenlee and HRP are the bullies and have caused significant damage to Healthcare*First* and its customer relationships.

In a desperate attempt to escape liability through their Motion to Dismiss, Defendants ask this Court to overlook the allegations of their misconduct, ignore the full language and context of the language in the Release Agreement, discount the allegations of material breach, and gloss over the fact that the Release Agreement is only signed by *one* of the Defendants – i.e., only Greenlee and not HRP. They pray this Court turns a blind eye to the multitude of facts pleaded by Healthcare*First* in support of each of the ten counts in the Amended Complaint ("Complaint"). However, this Court should not entertain this unwarranted request for dismissal.

**ARGUMENT**

I. **LEGAL STANDARD**

1

"When analyzing the adequacy of a complaint's allegations…[courts] must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiffs." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). A sufficient complaint need only have, "facial plausibility [i.e.] whe[re] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Healthcare*First*'s only requirement is to submit "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing Fed. R. Civ. P. § 8(a)(2)).

Here, Healthcare*First* meets this minimal burden and pleads sufficient facts that – when assumed to be true and viewed in the light most favorable to it – give Greenlee and HRP fair notice of the allegations against them and make a facially plausible complaint based on valid causes of action. Accordingly, this Court should deny Defendants' Motion.

**II.  THE PLAIN MEANING OF THE RELEASE AGREEMENT BARS NONE OF HEALTHCAREFIRST, INC.'S CLAIMS AND GREENLEE HAS MATERIALLY BREACHED IT IN ANY EVENT.**

Federal courts must apply Missouri law in adjudicating contract complaints arising in Missouri. *See DocMagic, Inc. v. Mortg. P'ship of Am., L.L.C.*, 729 F.3d 808, 812 (8th Cir. 2013); *State Line Bag Co., LLC v. CompanionLabs Sys., Inc.*, 2018 WL 4008992, at *5 (W.D. Mo. Aug. 22, 2018). "[Missouri] Courts apply general contract principles in determining the validity of a release." *Helms v. Express Pharmacy Servs. of Missouri, Inc.*, 2007 WL 541599, at *2 (W.D. Mo. Feb. 16, 2007) (citing *Lancaster v. Buerkle Buick Honda Co.*, 809 F.2d 539, 541 (8th Cir.1987)). Here, applying general contract principles under Missouri law, there are numerous reasons why Defendants are wrong and the Release Agreement signed by Greenlee does not bar *any* of Healthcare*First*'s claims as a matter of law.

2

**A.** **The Release Agreement bars none of Plaintiff's claims because the release language does not include claims involving restrictive covenants necessarily applying to Greenlee's *post-employment* conduct.**

At the center of Defendants' Motion is a dispute about the scope of Plaintiff's release of claims against Greenlee and the integration clause:

> By execution of this agreement, Employer also agrees to release me from any and all claims and damages of any kind whatsoever, including any and all claims, or causes of action or damages *which arise as a result of any employment relationship* between the Employer and myself. Doc. 14 ("Complaint") (Ex. 4) at ¶ 2, sixth full paragraph.

> I agree that this Release constitutes the entire agreement between the Employer and me in connection with my employment and supersedes any and all other agreements or representations (either oral or written), between the parties *in connection with my employment* except for the Dispute Resolution Agreement. Complaint (Ex. 4) at ¶ 8.

Defendants allege that the release at issue includes a release of all claims, including claims arising from post-employment restrictive covenants and Greenlee's behavior *outside* of the employment relationship. They argue that the release covers all agreements *merely because* they were signed during Greenlee's employment with Plaintiff. Likewise for the integration clause. Defendants are wrong.

> **1.** **The phrase 'arise as a result of' is distinct from the phrase 'arise out of and the two cannot be substituted for each other.**

Missouri courts must enforce the terms of a contract according to the plain meaning of the terms when the contract is unambiguous. *DocMagic, Inc.*, 729 F.3d at 812. Defendants argue in their Motion that the phrase 'arise as a result of' is similar enough to 'arise out of' to make the two phrases interchangeable. However, where phrases are merely similar, courts should not treat them as interchangeable. *See Express Scripts, Inc. v. Maury Cty.*, 2010 WL 1141342, at *5 (E.D. Mo. Mar. 22, 2010) ("[a]lthough the language is similar, the Court cannot rely on the authority cited by Defendant regarding the meaning of the phrase "arising out of.")

Defendants need the broadest possible definition of the relationship between Greenlee's employment and the claims he is being released from in the Release Agreement. But this case is not about the phrase "arising out of." Defendants cite only one case to support their assertion that "arising

3

out of" can be substituted for the contractual phrasing of "arising as a result of." Importantly, however, the case does not actually say that. On the contrary, the court, in considering the **same** contention in that case, held that, "[a]lthough the language is similar, the Court cannot rely on the authority cited by Defendant regarding the meaning of the phrase 'arising out of.'" *Express Scripts, Inc.*, 2010 WL 1141342 at *5.

Indeed, it is a basic principle of contract interpretation that courts rely on the language the parties "actually used". *Richland State Bank v. Household Credit Servs.*, 340 F. Supp. 2d 1051, 1058 (D.S.D. 2004); *see also Cameron Mut. Ins. Co. v. Bower*, 558 S.W.2d 226, 228-29 (Mo. App. 1977) (finding that, where the contract term in dispute is "actual use" and prior decisions held that "actual use" is broader than "actual operation", cases involving the clause "actual operation" were inapposite). Defendants' arguments regarding 'arising out of' are simply irrelevant to determining the meaning of the phrase 'arising as a result of.'

> ### 2. *The true definitions of 'arise' and 'as a result of' favor a narrower causal relationship.*

Defendants offer an attempt at defining the terms "arise" and "result" as they are found in Merriam Webster's online dictionary. Defendants misidentify what part of the sentence the word "result" is being used as in this phrase. Defendants give the definition of the **verb** form of "result" and not the **noun** form. Even worse, the phrase "as a result of," in the same dictionary Defendants are using, is identified as an idiomatic phrase, meaning, "because of something." *Definition*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/disctionary. Furthermore, "because of" is a prepositional phrase meaning, "by reason of; on account of." *Id*. Finally, the entire definition for "arise" is, "to begin to occur or to exist; to come into being or to attention; or, to originate from a source." *Id*. Putting them all together, in the Release Agreement, the claims that Greenlee is released from are only those claims beginning to exist because of – in the sense of "by reason of" or "on account of" – any employment relationship with Healthcare*First*.

4

This is a far cry from the very broad definition Defendants gave the terms in their Motion. Here, the idiomatic phrase "as a result of" modifies the scope of the verb "arise" to only those claims occurring "because of" Greenlee's employment relationship with Plaintiff. But, this Court has already determined that "because of" means the "proximate cause" in the case of contracts. *See In re Sedalia Farmers' Co-op. Packing & Produce Co.*, 268 F. 898, 902 (W.D. Mo. 1919). "Proximate cause" is, of course, something more narrow than just any cause; the "proximate cause" is the legal reason, or ***the*** reason for the claim. And employment relationships, in the case of claims regarding restrictive covenants, are not ***the*** reason for those claims arising from restrictive covenants. Rather, "the reason" for restrictive covenants (and claims associated with them) is decidedly for protection from what an employee does ***outside*** of the employment relationship. *See, e.g., Porters Bldg. Centers, Inc. v. Sprint Lumber*, 2017 WL 4413288, at *3 (W.D. Mo. Oct. 2, 2017) (finding that any violation of a restrictive covenant, e.g., downloading customer lists for personal use, is an action outside of the employment relationship); Healthcare *Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 610 n. 3 (Mo. 2006) (reasoning from a violation of the duty of loyalty in agency law that restrictive covenants are about activities outside of employment); *N.I.S. Corp. v. Swindle*, 724 F.2d 707, 708 (8th Cir. 1984) (finding that restrictive covenants prohibited competition for a period of time after the employment relationship was terminated); *CRST Expedited, Inc. v. Swift Transportation Co. of Arizona, LLC*, 2019 WL 2929516, at *15 (D.N.D. July 8, 2019) ("…liability for interference with the restrictive covenants is independent of the existence of an employment relationship.").

Accordingly, the plain language of the Release Agreement does not release Greenlee from his obligations under the various restrictive covenants he signed. Plaintiff pleaded as much. Complaint ¶¶ 66-87.[1]

---

[1] If the Release Agreement language is not 100% clear that it does not bar any of Plaintiff's claims, then it is ambiguous. A contract is ambiguous when, "[it] is susceptible to more than one reasonable interpretation." *Farmland Indus., Inc. v. Frazier-Parrott Commodities*, 111 F.3d 588, 590 (8th Cir. 1997). At the very least, there would be two

**3.** *The integration clause only acts to supersede agreements in connection with Greenlee's employment, but claims of violation of the restrictive covenants are not claims Greenlee is released from so there is nothing about them to supersede.*

The above analysis is also fatal to Defendants' interpretation of the scope of the integration clause in the Release Agreement because these other agreements are no longer in conflict with the Release Agreement. There is ***nothing*** to supersede since the restrictive covenants are not inconsistent with the Release Agreement; they are just separate agreements and not superseded by integration clauses. *See Red Lobster Inns of America, Inc. v. Lawyers Title Ins. Corp.*, 656 F.2d 381, 384 (8th Cir. 1981) (finding that, where the earlier agreement was not inconsistent with the subsequent contract between the same parties, the integration clause did not preclude operation of the earlier contract as they were two separate agreements).

Defendants have offered very little argument as to why the integration clause would supersede Greenlee's prior restrictive covenant agreements. It comes down to a single case, which they argue is "on point," *Carboline Co. v. Lebeck*, 990 F. Supp. 762, 765 (E.D. Mo. 1997). Looking closer, however, *Carboline* is distinguishable for two reasons. First, the case before the court in *Carboline* is a preliminary injunction decision. The standard for granting a preliminary injunction is much higher than surviving a motion to dismiss. *Id*. Second, the integration clause considered by the court in *Carboline* was far broader. *Id*. (compare the *Carboline* clause which, "supersedes all prior understandings,…, between Employer and Mr. Lebeck," with the one at issue in this case, "supersed[ing] any and all other agreements or representations…, between the parties in connection with my employment"). In the clause at bar, "in connection with" means "in relation to something; for reasons that relate to

---

reasonable interpretations of the Release Agreement and this makes the interpretation a question of fact not subject to dismissal based on Defendants' Motion.

The extrinsic evidence pleaded by Healthcare*First* must be considered as a factual matter. "Where a contract is ambiguous, a court may weigh extrinsic evidence." *Barker v. Ceridian Corporation*, 122 F.3d 628, 638 (8th Cir. 1997). Whether a contract is ambiguous is a question of law, but the resolution of that ambiguity is a question of fact. *See Express Scripts, Inc. v. Maury Cty*., 2010 WL 1141342, at *3 (E.D. Mo. Mar. 22, 2010); *Resolution Tr. Corp. v. Gibson,* 829 F. Supp. 1121, 1133 (W.D. Mo. 1993) (citations omitted).

(something)." *Definition*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/disctionary (last visited September 14, 2020).

Accordingly, we are back where we were in the last section. Insofar as the reason for restrictive covenants and claims related to them is associated with what an employee does ***outside*** of the employment relationship, the integration clause fails to supersede any agreements related to restricted covenants. The phrase Defendants wish to substitute for the actual phrase in the Release Agreement cannot be used in such a way. Indeed, the definitions of "arise" and "as a result of" comprise a much narrower causal relationship than the phrase "arise out of" suggests. The Release Agreement, when this is considered, actually allows for claims brought against Greenlee as a result of the restrictive covenants he signed. Indeed, they are simply separate and compatible agreements.

Thus, Healthcare*First* asks this Court to find that its account of the plain meaning of the integration clause in Release Agreement is the correct one. Or, alternatively, Healthcare*First* suggests that both interpretations are reasonable and the integration clause is therefore ambiguous. Either way, Defendants' Motion should be denied.

**B.      Insofar as Healthcare*First* alleges that the Release Agreement has been materially breached, then Healthcare*First* can properly bring claims that might have otherwise been released if Greenlee had not so breached the agreement.**

Defendants' central argument relies on a scenario that the Release Agreement is still in effect – and thereby bars, as a matter of law – any claims Healthcare*First* has against them. Unfortunately for Defendants, however, under Missouri law, it is a basic tenet of contract law that when one party materially breaches the contract, this excuses the other party's performance under that contract. *Schaefer v. Rivers*, 965 S.W.2d 954, 958 (Mo. Ct. App. 1998). Further, whether or not a party materially breached a contract is a question of fact, not one of law. *Campbell v. Shaw*, 947 S.W.2d 128, 132 (Mo. Ct. App. 1997). Thus, any motion to dismiss in this context (such as Defendants' Motion here) can only be successful where a plaintiff has failed to plead sufficient facts to give rise to a plausible claim that the defendant has materially breached the controlling agreement. But certainly

7

Plaintiff has pleaded sufficient facts to give rise to a plausible claim that Greenlee materially breached the Release Agreement.[2]

A regular breach claim is one where a party to a contract fails to perform its obligations and causes damages, but a material breach is one where the breach relates to a vital provision (i.e., a material term) of the agreement that does not simply pertain to a subordinate or incidental matter. *See, e.g., Eskridge Enterprises, LLC v. Iqbal*, 2015 WL 12843828, at *2 (W.D. Mo. June 24, 2015); *Greenstreet v. Fairchild*, 313 S.W.3d 163, 169 (Mo. Ct. App. 2010); *Supermarket Merch. & Supply, Inc. v. Marschuetz*, 196 S.W.3d 581, 586 (Mo. Ct. App. 2006) (reversing summary judgment since Plaintiff materially breached employment agreement by unilaterally changing terms and conditions which were vital provisions). "[A] party who is the first to violate the contract by failure to give material performance may not [then] claim its benefit." *McKnight v. Midwest Eye Inst. of Kansas City, Inc.*, 799 S.W.2d 909, 915 (Mo. Ct. App. 1990) (citing *Rexite Casting Co. v. Midwest Mower Corp.*, 267 S.W.2d 327, 331[7–12] (Mo.App.1954)).

Aside from just looking at whether the provision breached was vital, Missouri courts also utilize a five factor balancing test in their analysis: "(1) the extent to which the injured party will be deprived of a reasonably expected benefit[;] (2) the extent to which the injured party can be compensated for the part of that deprived benefit[;] (3) the extent to which the party failing to perform will suffer forfeiture[;] (4) the likelihood that the party failing to perform will cure that failure[;] and (5) the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing." *See, e.g., McKnight*, 799 S.W.2d at 915 (citations omitted).

In *B & B Equip. Co. v. Bowen*, the court considered the question of material breach in the context of an employment contract and used both tests related above. 581 S.W.2d 80, 86-87 (Mo. Ct. App. 1979). As to a vital provision, the court looked at the multiple purposes of the agreement from

---

[2] If this Court determines otherwise, Healthcare*First* should be granted leave to amend its complaint.

8

Case 6:20-cv-03243-RK    Document 23    Filed 10/30/20    Page 12 of 21

the side of the injured party. *Id*. at 85-86. In its analysis, the stated purpose of the agreement mattered less than, in context, what the injured party was clearly expecting. *Id*. at 86. Furthermore, a party's failure to perform a substantial portion of their material obligations, leaves the injured party without its reasonably anticipated substantial benefit from the contract. *Id*. In addition, while it mattered that the kind of breach committed did not easily lend itself to compensatory damages, more important for the court, was that any loss suffered by the party that breached was "self inflicted." *Id* at 87. Lastly, Bowen's refusal to cease breaching the agreement when asked was sufficient evidence both that Bowen would likely not cure the breach and refused to abide by standards of good faith and fair dealing. *Id*. Taking these facts into consideration, the court affirmed the lower court's ruling that Bowen had materially breached and B & B no longer had to perform.

There is no doubt, based on the less severe violations occurring in *Bowen*, that Healthcare*First* pleaded sufficient facts to make plausible a claim that Greenlee materially breached the Release Agreement. Here, from Healthcare*First*'s (i.e., the injured party's) point of view and as sufficiently pleaded to meet these tests, the provisions Greenlee violated were vital to the contract and his violation was material:

- Greenlee represented that he had returned and would return all of Plaintiff's property, that he had not and would not misappropriate any confidential information or trade secrets and had held and would hold Plaintiff's confidential information, such as customer lists and marketing materials, "as a fiduciary, in strict confidence and trust, for the Employer's sole benefit." Complaint ¶¶ 66-67, (Ex. 4) at ¶¶ 3.3-3.6.

- The contract expressly states these representations were vital to the agreement:

> As partial inducement for the Employer to provide me with the Separation Package, I also make the following representations intending that the Employer ***will rely upon them*** in providing the Separation Package to me. I also understand that if any of said representations are untrue or inaccurate or should the Employer discover or learn that any of said representations are not true or are not accurate, the Employer ***will have no obligation*** to provide me with the Separation Package referenced above.

9

*Id*. (Ex. 4) at ¶ 3. (Emphasis added).  Thus, going further than the agreement in *Bowen*, the Release Agreement here identifies these provisions and representations as vital by identifying them as central to HealthCare*First*'s inducement for their obligations in the agreement. *Id.* ¶¶ 68-70, (Ex. 4) at ¶¶ 3, 11.

- Greenlee knew the non-compete provision was vital as he asked for clarification from Plaintiff during the negotiations and Plaintiff instructed him to contact them if the situation arose. *Id.* ¶¶ 72, 108.

- Of course, Greenlee did not do that. Instead, like Bowen's failure to perform, Greenlee wrongfully retained possession company property and confidential information through misappropriation and he then actually ***used*** it to Healthcare*First*'s disadvantage, irreparably damaging Healthcare*First* by contacting and soliciting and continuing to contact and solicit its customers. *Id*. ¶¶ 99-105, 109-112.

- Healthcare*First*, like B & B, did not receive the reasonably expected benefit of the bargain. Moreover, while some of the damages caused by Greenlee's material breach lend themselves to compensatory damages, like B & B, most of the harm to Healthcare*First* cannot be sufficiently compensated. *Id*. ¶¶ 17-24, 45, 47, 52, 55, 60, 65-66, 109, 122-128, 137-139, 150-158, 160, 169-170, 178-180, 186-188, 194-196, 202-209, 215-222, 226; (Ex. 1) at ¶ 1; (Ex. 2) at ¶¶ 4, 15; (Ex. 3) at ¶¶ 1, 11-14; (Ex. 4) ¶¶ 3.3-3.6.

- Indeed, more importantly, like in *Bowen*, any forfeiture Greenlee would suffer here in the form of being liable for his violations is purely "self inflicted." Finally, when confronted with his material breach, Greenlee, like Bowen, refused to stop and has continued to this day. *Id*. ¶¶ 99-112, 168.

Given all of this, as in *Bowen*, Plaintiff has pleaded sufficient facts to make plausible a claim that Greenlee materially breached the Release Agreement.

Again, Defendants' Motion should be denied. Defendants' request that this Court rule on the interpretation of the release and integration clauses is inappropriate at a motion to dismiss stage. Taken as true and in the light most favorable, Plaintiff has clearly pleaded facts sufficient to make plausible the claim that Greenlee materially breached the Release Agreement.

**C.     In addition, contrary to what Defendants argue, if the Court holds that     the Release Agreement bars some of the claims in Plaintiff's     complaint as a matter of law, several claims survive.**

Defendants boldly announce on page 9 of their Motion that "EACH OF PLAINTIFF'S CLAIMS IS BARRED BY THE FULL AND GENERAL RELEASE."  But this is simply not true. Even if this Court finds that the Release Agreement provides Greenlee with protection from some of the claims made in the Amended Complaint – or that he has not materially breached the Release Agreement – there are a number of claims that necessarily survive.

Even if this Court determines as a matter of law that some claims might be barred by the Release Agreement (and it should not), this does not stretch to include ***all*** claims in the Complaint. For example:

- any claim against ***HRP*** is not barred by the Release Agreement because HRP is certainly not a party to the Release Agreement nor are they a third party beneficiary. *See MSK EyEs Ltd. v. Wells Fargo Bank*, *Nat. Ass'n*, 546 F.3d 533, 541 (8th Cir. 2008) (finding a release of a party does not apply to a non-party); Restatement (Second) of Contracts § 302 (1981). These claims include Counts I-III and VIII-X in the Amended Complaint.  Even if the Court agrees with Defendants regarding the Release Agreement language, any claims against a party who is not a signatory to the Release Agreement (i.e., HRP) would not be barred;

- any claim alleging violations by Greenlee of the Release Agreement ***itself*** cannot be barred by either the release language or the integration clause in that Release

11

Agreement. *See Bugg v. Washington Mut. Bank,* 2007 WL 9718033, at *3 (W.D. Mo. July 2, 2007) (treating a breach of a provision of a Release Agreement as a viable claim even if prior claims were released). Indeed, such a result would be absurd and illogical; and

- any subsequent, post-Release Agreement statutory or common law violation by Greenlee would not be barred or affected by any release language in the Release Agreement.

Again, Defendants' attempt to substitute their self-serving interpretations and definitions of the wording in the Release Agreement for the plain meaning cannot be allowed. In fact, when the correct dictionary definitions are used, it is clear that at least one – if not *the only* – reasonable interpretation is that the Release Agreement does not bar Healthcare*First*'s claims. And, as explained above, when an agreement is materially breached, the injured party need not continue to perform. Plaintiff has pleaded sufficient facts to give rise to a plausible claim that Greenlee materially breached the Release Agreement. Thus, Healthcare*First* need no longer perform by continuing to release Greenlee from any claims, including those Healthcare*First* has alleged.

Nonetheless, even if this Court disagreed with this analysis, it should still deny Defendants' Motion with regard to claims against HRP or post-Release Agreement misconduct.

## III. HEALTHCAREFIRST, INC.'S COMPLAINT PLEADS SUFFICIENT FACTS TO STATE A PLAUSIBLE CLAIM FOR EACH COUNT

For each and every count of the Complaint, Healthcare*First* has met the minimal standard to survive a motion to dismiss. Defendants' Motion as to each count incorrectly argues that each count in the Complaint should be dismissed because HealthCare*First* released Greenlee from such claims through the Release Agreement. Doc. 19 ("Motion") §§ III, V, VI(A). Because Healthcare*First* already addresses that faulty contention above, Plaintiff below provides only specific rebuttal to Defendants' misguided attacks on the pleading sufficiency of each claim outside of Defendants' assertions

12

regarding the Release Agreement. Simply put, however, Healthcare*First* has alleged facts meeting each required element of each cause of action in the Complaint.

**A.     In Counts II and III, Healthcare*First*'s complaint adequately alleges the existence of trade secrets, actual or threatened misappropriation, and damages.**

Healthcare*First* has clearly pleaded sufficient facts to give rise to plausible claims under the DTSA and MTSA. First, the Amended Complaint alleges that Defendant Greenlee downloaded onto his personal laptop (and then later used and continues to use) trade secrets described as, "customer lists, training materials and marketing materials." Complaint ¶ 99.

Healthcare*First* also describes how it kept the trade secrets a secret and how they derived independent value by not being readily ascertainable are more than sufficient. By describing its restrictive covenants, cybersecurity policies, multiple trainings, Plaintiff has sufficiently pleaded the reasonable measures it has taken to keep the information secret. *Id*. ¶¶ 15, 25-29, 43-70.

Further, Healthcare*First* lays out facts supporting its cybersecurity policies, the agreements that Greenlee signed, descriptions of its business model as a sales entity relying on confidential information about its customers, the description of Greenlee's job duties and its regular training of employees on the IT policies. All of these facts show in great detail how Healthcare*First*'s trade secrets would derive independent value by not being readily available to or disseminated into the public domain. *Id*. ¶¶ 16-24, 32, 38.

The factual support for misappropriation is pleaded in the Complaint by the allegations that Greenlee downloaded, against policies, agreements, training and his representations in the Release Agreement, trade secrets in the form of customer lists and marketing and training materials in order to use them for his and HRP's personal financial gain by using them to contact and market to Plaintiff's customers specifically. *Id*. ¶¶ 99-109. Furthermore, HRP's liability is demonstrated by pleading that, in fact, Greenlee's position at HRP, as founder and CEO, imputes any knowledge he had that the use

of the customer lists and marketing and training materials were trade secrets and their misappropriation and use violated Healthcare*First*'s rights. *Id*. ¶¶ 3-7, 30, 33-35.

Finally, Healthcare*First* clearly pleads actual misappropriation and damages in each count. It pleads damages in excess of $75,000 for "loss of goodwill, harm to reputation, for reasonable attorneys' fees and costs and necessary expenses incurred, for court costs, and for such other and further relief as the court deems just and proper." *Id.* WHEREFORE clauses, pgs. 32, 36.

Accordingly, Healthcare*First* presents sufficient facts to make a plausible claim against Defendants under both the FDTSA and MTSA. This Court should deny Defendants' Motion.

**B. In Counts VIII and IX, Healthcare*First*'s amended complaint provides sufficient factual information to support its tortious interference of contract and business expectancy claims.**

Similarly, Healthcare*First* pleaded sufficient facts to raise plausible claims of tortious interference of contract and business expectancy.

For count VIII, Plaintiff clearly identifies that the contracts it alleges it had were all of the agreements it had with Greenlee. *Id*. ¶¶ 197-199. Indeed, what was breached in each of the agreements is spelled out in painstaking detail in the Complaint. *Id*. ¶¶ 77, 109-112. Greenlee knew he had no justification for his downloading of the materials and lists and certainly knew he had no justification to do so or use them to compete through HRP. *Id*. ¶¶ 50, 59, 64, 67, 72-73, 77, 201. Indeed, he asked if he had justification and was told he did not. *Id*. ¶ 72.

For count IX, Defendant complains that Healthcare*First* did not adequately describe its business expectancy. A continuation of customer relationships and sales is an obvious and protected expectation under Missouri law, and Healthcare*First* sufficiently pleads the facts and elements necessary for such a claim. *Id*. ¶ 32. Healthcare*First* specifically pleads that its business is to engage in continued "maintenance" and "servicing" of client needs with regard to the home health and hospice care market. *Id*. Indeed, Greenlee's job duties involved "selling [Healthcare*First*'s] products to prospects and customers in order to achieve designated sales and activity goals." *Id*. ¶ 38.

Healthcare*First* is the epitome of a company that has a valid business expectancy to continue to sell services to its customers, and it has sufficiently pleaded facts giving rise to a plausible claim of tortious interference with a business expectancy.

With regard to HRP's liability, Healthcare*First* also pleaded sufficient facts to make a plausible claim against HRP for tortious interference of contract and both Defendants for tortious interference of business expectancy. Defendants conveniently ignore that HRP is, as Healthcare*First* pleaded, founded and run by Greenlee so, therefore, Greenlee's knowledge is HRP's knowledge. *Id*. ¶¶ 3-7, 30, 33-35; *see also Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 841 (8th Cir. 2005) (explaining that the 'sole actor' doctrine imputes knowledge from an agent to a principal when an agent, "assum[es] the role of principal as well as an agent"); 18B Am. Jur. 2d Corporations § 1424. The assertion that HRP induced Greenlee's breaches is, in fact, a logical and reasonable inference.

Accordingly, this Court should deny Defendants' Motion with regard to Counts VIII and IX in the Amended Complaint.

### C. In Count X, the amended complaint provides sufficient factual information to support an injunction.

In order to receive a preliminary or permanent injunction, Healthcare*First* must show that failure to receive the injunction can lead to irreparable harm and that it is likely to succeed on the merits. *See Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). As described above, Healthcare*First* sufficiently pleaded such facts for each and every claim in the Complaint and the Court must take these facts as true and in the light most favorable to Healthcare*First.* Accordingly, it is similarly clear that Healthcare*First* makes a plausible claim that it is likely to succeed on the merits and that survives Defendants' Motion at this early stage.

## IV. CONCLUSION

For all of the forgoing reasons, this Court should deny Defendants' Motion to Dismiss.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.

By: ___*/s/ James M. Paul*_____
James M. Paul, MO 44232
Sean J. Oliveira, MO 72056
7700 Bonhomme Avenue, Suite 650
St. Louis MO, 63105
Telephone: 314.802.3935
Facsimile: 314.802.3960
james.paul@ogletreedeakins.com
sean.oliveira@ogletreedeakins.com

-and-

___*/s/ Tina G. Fowler*_____
Tina G. Fowler, MO 48522
Baird Lightner Millsap
1901C South Ventura
Springfield, MO 65804
Office: 417.887.0133
Fax: 417.887.8740
tfowler@blmlawyers.com

Attorneys for Plaintiff HEALTHCARE*first*, Inc.

16

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2020, the foregoing was served via the Court's electronic e-filing and docketing system to:

Daniel K. Wooten, Esq. Mo Bar #48061
Kevin H. Dunaway, Esq. Mo Bar #33799
C. Nathan Dunville, Esq. Mo Bar #68037
NEALE & NEWMAN, L.L.P.
Farmers Park
2144 E. Republic Road, Suite F-302
Springfield, MO 65804
Telephone: 417-882-9090
Email:  dwooten@nnlaw.com
        kdunway@nnlaw.com
        ndunville@nnlaw.com

**Attorneys for Defendants**

*/s/ James M. Paul*
Attorney for Plaintiff

44802561.1

17